No. 20,935.

IOTA M. NORMAN, as Administratrix, etc., *Appellant,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. PLEADINGS—*Allegations Stricken Out—Intermediate Order—Time in Which to Appeal.* Where certain allegations in a petition, stricken out on the order of the trial court, involve the merits of a cause of action or some part of it, the order to strike out is an intermediate appealable order, and an appeal must be taken thereon within six months; otherwise the supreme court has no jurisdiction to consider it.

2. DEATH OF EMPLOYEE — *Negligence of Defendant Not Shown — Demurrer.* Where liability for the death of an employee is sought to be established by probabilities alone, and there is an absolute want of

any legal evidence tracing the death of the employee to the negligence of his employer, a demurrer to the evidence is properly sustained.

3. SAME. Defendant's freight-train conductor was killed by the explosion of torpedoes set upon a railroad track by some unknown person. The evidence showed that the torpedoes were the same kind as those kept by the defendant in its locked storeroom not far away. The window of the storeroom was not always securely fastened. The key to the storeroom was accessible to the defendant's employees. Upon the establishment of these bare facts the plaintiff rested her cause, it being plaintiff's theory that it was sufficient for her to show that the torpedoes were thus negligently kept where some thief may have stolen them and set them on the track where by explosion they killed the employee. *Held*, that a demurrer to the evidence was properly sustained.

Appeal from Neosho district court; JAMES W. FINLEY, judge. Opinion filed November 10, 1917. Affirmed.

*C. E. Pile, L. E. Goodrich,* both of Parsons, and *J. H. Wood,* of Sherman, Tex., for the appellant.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, and *John J. Jones,* of Chanute, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff sued the defendant for damages for the death of W. F. Norman, a freight conductor, who was killed by the explosion of torpedoes which some unknown miscreant had placed upon the railroad track in the defendant's freight yards in Chanute. At the time Norman met his death he was checking the initials and numbers of freight cars of a train which he had just taken charge of. The cars were moving, and when they came in contact with the torpedoes the latter exploded, and a fragment struck him in the eye, penetrating his brain and causing his death.

Plaintiff's petition alleged the dangerous character of the torpedoes; that the defendant had a large number of them in a storeroom in the railroad yards near by; that the torpedoes were negligently and carelessly stored therein; that call boys and other employees had easy access to the key to the storeroom, and that the key was accessible to any one who wanted to use it. One paragraph of the petition reads:

"8. Plaintiff further alleges that by reason of the acts of negligence alleged in paragraph 7 herein, some person, unknown to this plaintiff,

had access to said defendant's supply of said torpedoes and placed the same upon the track where they were exploded by the cars approaching said W. F. Norman while he was engaged in the duty of taking the numbers of his train; . . . that it was a duty which said defendant owed to W. F. Norman as one of its employees to have stopped said dangerous practice and to have made it impossible for said improper and dangerous practice to have grown up or continued; that by reason of said improper and dangerous practice said W. F. Norman was caused to be killed."

Certain allegations of plaintiff's petition were stricken out by order of court. They read:

"Plaintiff further alleges that a custom and practice had grown up in the yards of said defendant at Chanute, Kansas, of taking torpedoes from said storeroom and placing them upon the rails of said company's tracks in said yards for the purpose of having them exploded by cars moving over them in order to perpetrate a practical joke on the other employees or persons about said yards who might be scared thereby; that said custom and practice had existed in said yards for a long time prior to said 25th day of December, 1914; that said yardmaster knew, or by the exercise of ordinary care and caution, could, would and should have known of the existence of said practice; that said practice was a highly dangerous and improper practice; that said practice was in violation of the rules and regulations of said company relative to the use of said torpedoes; that said improper use and dangerous practice was not generally known to the trainmen of said defendant company operating trains in and out of said company's yards at said city of Chanute. . . .

"That by reason of said dangerous and improper practice of playing practical jokes by the use of said torpedoes, as hereinabove alleged, said W. F. Norman was caused to be killed."

At the trial, when plaintiff's evidence was concluded, a demurrer thereto was sustained and the jury discharged.

The errors assigned by plaintiff relate to the matter stricken out of her petition, and to the sustaining of the demurrer to the evidence.

Defendant challenges the court's jurisdiction to review the question presented touching the matter stricken from the petition for the reason that more than six months elapsed after the ruling of the trial court before an appeal was taken. The code gives an appeal from any order of the district court "that involves the merits of an action, or some part thereof." (Civ. Code, § 565.) An order to strike out certain parts of a petition is equivalent to sustaining a demurrer thereto. If the matter stricken out involved the merits of the action or some part thereof, the order to strike out was certainly an in-

termediate appealable order. (*Whitlaw v. Insurance Co.,* 86 Kan. 826, 122 Pac. 1039.) The plaintiff's petition without the matter stricken out either did or did not state a cause of action. If without the stricken matter the petition did not state a cause of action, the plaintiff should have appealed within six months, for the all-important reason that this court's jurisdiction is limited to appeals taken within that time. (Civ. Code, § 572.)

In *White v. Railway Co.,* 74 Kan. 778, 88 Pac. 54, it was said:

"Upon this phase of the matter this court is committed to the proposition that whenever a year [six months under new code] elapses after the making of an intermediate appealable order without a petition in error being filed the right is lost to review such order, either by a separate proceeding directed against that very ruling or in the course of an effort to procure the reversal of the final judgment. [Citing cases.] In other respects we prefer to follow the rule that seems to have the support of the majority of the courts that have passed upon the question, and to hold that upon proceedings in error brought to reverse a final judgment this court may inquire into the correctness of a prior ruling which would have supported an independent appeal, provided the petition in error is filed within one year from the time of the making of such ruling." (p. 782.)

(See, also, *Slimmer v. Rice,* 99 Kan. 99, 100, 160 Pac. 984.)

Plaintiff contends that since the defendant did not file a motion to dismiss this phase of the appeal, as it was privileged to do under the rules of this court, it can not now question the right to have the order reviewed. That contention is not new. In *Tucker v. Tucker,* 97 Kan. 61, 154 Pac. 269, it was said:

"It is urged that the plaintiff should not be heard on his motion or suggestion in his brief that the appeal be dismissed for the reason that he should have called the attention of the court to the matter in proper time and by proper motion under rule 10, but the statute leaves this court without jurisdiction unless the appeal be taken within six months from the rendition of the judgment or order appealed from. (Laws 1913, ch. 241, § 1.)

"This jurisdiction is vested by statute only, and no estoppel, laches or informality of a party can confer it. Neither does failure to raise the question relieve us of the duty to decline, even of our own motion, the exercise of jurisdiction which we do not possess." [Citing cases.] (p. 62.)

Passing to the question of the propriety of the demurrer to the evidence, plaintiff's witnesses established the fact of Norman's death by the explosion of some half dozen torpedoes in

rapid succession on the defendant's tracks while he was engaged in taking the numbers of freight cars moving past him. Certain witnesses testified about making an examination of the storeroom where the defendant kept its torpedoes; that the door was locked, but a window was not latched and could be opened from the outside. One witness, an ex-employee, had once gone into the storeroom through the window. The key to the storeroom hung in the yardmaster's office beside a clerk's desk, and sometimes employees entrusted with the key would forget to return it and would carry it home over night. Some torpedoes unexploded were found by the rails where the accident occurred. They and the fragments of the exploded torpedoes were of the same make as those kept in the defendant's storeroom.

There was no other evidence showing or tending to show that the torpedo which killed Norman belonged to defendant. There was no evidence of any dereliction on the part of the defendant unless it was the failure to latch the window of the storeroom so that it could not be pried open from the outside. The storeroom was in the railroad yards, where no one but the company's employees had a right to be. No evidence was produced that the defendant had tolerated trespassers who might have broken into the storeroom or that the company had knowledge of such misdeeds of trespassers. The probabilities are that the torpedo which killed Norman belonged to defendant; that some miscreant went into its storeroom and stole the torpedoes and set them on the track. But probabilities and plausible conjectures alone are not evidence. The rule in *Clark v. Powder Co.,* 94 Kan. 268, 146 Pac. 320, touching the high responsibility resting upon owners of dangerous explosives to keep them in close custody is invoked. To that rule we still adhere; but here the facts, the proof, the causal connection between negligence and the consequences of negligence are wholly wanting. The torpedo which killed Norman might have belonged to the defendant; it might have belonged to any other railroad company; it might have belonged to anybody else. The evidence was clearly insufficient to charge the defendant with responsibility for the unfortunate death of Norman, and the judgment on the demurrer to the evidence must be affirmed.