No. 38,901

WALTER R. PIPER, *Appellant,* v. THE CITY OF WICHITA, A Municipal Corporation; EUGENE N. SMITH, as City Manager thereof; ELGIN WOOD, as Fire Chief thereof, *Appellees.*

(258 P. 2d 253)

Opinion filed June 6, 1953.

*Robert R. Hasty,* of Wichita, argued the cause and was on briefs for the appellant.

*Douglas E. Shay,* of Wichita, argued the cause, and *Fred W. Aley* and *Lawrence E. Curfman,* both of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This is an action in mandamus to compel defendants to reinstate plaintiff as lieutenant in the fire department of the city

of Wichita and to compensate him for damages by reason of his dismissal. Judgment was for defendants. Plaintiff has appealed.

After the formal allegations, the motion for a writ alleged that plaintiff had since June 2, 1935, been a full time member of the fire department of Wichita and was at the time the action was begun a lieutenant; that the city had a full time paid fire department; that the city was required by G. S. 1949, 13-701, to, by ordinance, place its fire department under civil service rules and regulations; that pursuant to such statute the city did in May, 1943, adopt civil service rules, publish them in a booklet and entitle it "You and Your Job With the City of Wichita." A copy of this booklet was attached to the motion and marked Exhibit "A." It will be referred to hereafter as Exhibit "A." The motion then alleged that at the time of the adoption of Exhibit "A" plaintiff became entitled to the rights and was subject to the responsibilities set forth therein; that as manager of the city Jones was by law and Exhibit "A" responsible for the administration of affairs of the city and had power to appoint and remove all department heads and employees; that by law and Exhibit "A" a department of safety was created as follows:

"C. Fire—The Fire Division, under the direction of the Fire Chief, operates ten fire stations in various parts of the City. It also maintains a fire prevention bureau, repair shop, paint shop and communications system."

That defendant Wood was by law responsible to the manager for the discipline, good order and proper conduct of the fire department and had power to suspend or dismiss any employee of the department for incompetency, neglect of duty or disobedience of the established rules and regulations of the department, as set forth in Exhibit "A" subject to the approval of the manager. The motion then alleged that on or about July 13, 1951, Wood, acting pursuant to verbal direction of the manager Jones, ordered plaintiff and other firemen to work at filling sandbags on the banks of the Arkansas river to prevent overflow thereof; that the firemen were told they would be paid at the rate of $1.90 per hour for their labor; that plaintiff protested the order mildly but under the threat of disciplinary action reported for duty and worked at sandbagging from 8 a. m. until about 12:30 p. m., when Wood ordered plaintiff to quit his work as sandbagging, stating plaintiff was suspended for being drunk; that immediately after suspension and under direction of the department doctor plaintiff's blood was tested for alcoholic content with findings of .065 percent of alcohol, whereas .15 percent or over

is considered evidence of drunkenness and as a matter of fact plaintiff was not drunk; that at the time Wood suspended plaintiff he was attempting to explain what had transpired but Wood refused to listen; that a fellow fireman had become unruly and plaintiff had requested Wood to come to the scene of the disturbance; that Wood was angry, refused to listen to plaintiff, suspended plaintiff without time limit, ordered plaintiff to go home and left the scene; that Wood had no authority over plaintiff as a fireman or to suspend him for conduct real or imagined not a part of or associated with fire fighting; that about July 16, 1951, at 9 a. m. Wood informed plaintiff that he was suspended for one week, transferred to Station No. 1 and demoted from lieutenant to private; that thereafter on August 6, 1951, Wood orally suspended plaintiff for an additional thirty days; that on August 11, 1951, Wood wrote plaintiff a letter wherein he attempted to discharge plaintiff, but this letter did not constitute a compliance with Exhibit "A"; that for the purpose of avoiding duplication of allegations plaintiff's notice of appeal was adopted as though set out in the motion; that the notice of appeal was filed with the personnel director in accordance with the provisions of Exhibit "A." The notice of appeal was attached as an exhibit; that after the filing of the notice of appeal Wood gave plaintiff a letter of discharge dated September 19, 1951, which letter was ineffective and void for failure to give reasons instead of conclusions and was not based on facts; that plaintiff had at all times complied with Exhibit "A" but defendants had failed to comply with it.

The motion then contained allegations detailing the provisions of Exhibit "A" as to suspensions, demotions and dismissals.

The motion then alleged that by reason of the law requiring the adoption of Exhibit "A" all parties to the action were bound by its provisions and required to follow provisions relating to suspensions, demotions and dismissal and time, manner and authority relating thereto.

The motion then alleged that notwithstanding the rights of plaintiff, defendants without just cause did suspend plaintiff, indefinitely, for one week and for an additional thirty days and demoted plaintiff from lieutenant to firefighter, by reason of demotion reduced his pay from that of lieutenant to that of firefighter first class and dismissed plaintiff as an employee.

The motion then alleged that defendants failed to require the person responsible to act as required by Exhibit "A" by having the

district chief report plaintiff's complaint to defendant Wood, and report results to plaintiff; to hold a meeting within ten days after receipt of complaint in writing filed with the personnel director for defendant city; after appeal defendants failed to hold a hearing within thirty days after a request for it was filed with the personnel director, which notice of appeal was filed with D. H. Lauchland, personnel director.

The motion then alleged that on October 1, 1951, the attempted hearing on charges against plaintiff was adjourned by the personnel advisory board; that a copy of the charges was not furnished plaintiff until October 4, 1951; that on October 25, 1951, the personnel board contrary to plaintiff's right to a hearing, as provided by Exhibit "A," held a purported hearing at which it failed to take certain action contrary to the rights of plaintiff.

The motion further alleged that with each change of status in plaintiff's employment Wood filed with the personnel director a "change of personnel statement," copies of which were attached; that following the purported hearing the personnel advisory board as a part of its report wrote to the manager, who wrote plaintiff concerning the findings of the board, copies of these letters were attached; that in the event the court should find the board had jurisdiction then the findings were arbitrary, contrary to law and to Exhibit "A"; that the findings of the board established that plaintiff was not drunk or under the influence of liquor; was not acting as a fireman while sandbagging; was not in the employ of city nor subject to any disciplinary action for any reason during the periods of suspension alleged; was not guilty of insubordination; was not guilty of conduct unbecoming an officer of the fire department; that the actions of defendants were arbitrary, in bad faith, unauthorized, unlawful and contrary to plaintiff's rights and the amount of damages was set out.

The alternative writ ordered defendants to reinstate plaintiff as lieutenant of the fire department and to compensate him fully for damages sustained by reason of his wrongful suspension and dismissal or show cause why they had not done so.

The complaint of plaintiff before the Personnel Advisory Board detailing his contention as to what happened, a letter of plaintiff to the personnel director, a statement of the fire chief to the Personnel Advisory Board entitled "Statement of Facts Justifying Action of Superior," Copies of Documents entitled "Personnel Change,"

various letters of plaintiff's counsel, the Findings of the Personnel Advisory Board and a letter of the city manager to plaintiff advising him of the findings of the board; that he was guilty of (*a*) insubordination; (*b*) conduct unbecoming an officer of the fire department and his suspension, demotion and removal was justified; that the manager concurred in the findings of the board and, therefore, the manager's previous action dismissing plaintiff from the department subject to his right of appeal to the board was made final, were all attached to the motion for a writ.

The defendants moved to quash the writ because it did not state facts sufficient to show the plaintiff to be entitled to the relief sought; did not show defendants were under any obligation to perform the acts commanded; that the writ commanded defendants to perform acts beyond the power of defendants; that the writ did not state facts showing the plaintiff had a clear, legal right to require the performance of the acts ordered; that the remedy sought was not within the scope of mandamus and the writ commanded the doing of a discretionary act in a particular way; that plaintiff had a plain and adequate remedy at law.

The defendants further answered that the city had provided for a city manager by ordinance; that Jones was manager; that under the statute he was responsible for the discipline of all appointive officers and was vested with the sole power of appointment and removal of officers; that plaintiff on or about July 13, 1951, embarked upon a course of conduct unbecoming an officer of the fire department; that Exhibit "A" was set up as an administrative procedure and while not having the force of law was followed by defendants in connection with the suspension and dismissal of plaintiff and plaintiff had a full, fair, impartial and complete hearing; that in the honest, reasonable and carefully considered judgment of Jones, plaintiff was guilty of insubordination and conduct unbecoming an officer of the fire department and in the best interests of the city should be dismissed; that this judgment of Jones resulted in the exercise by him of the discretion vested in him by law and in the exercise of such discretion Jones was not arbitrary, willful, capricious or unreasonable.

The trial court found that the motion to quash the writ should be sustained. Plaintiff's motion for a new trial was overruled and judgment rendered for defendants. Plaintiff's assignment of error is that the trial court erred in sustaining defendants' motion to quash

the alternative writ, in overruling plaintiff's motion for a new trial, and in entering judgment for defendants.

Some time subsequent to the appeal M. P. Jones ceased to be city manager and Eugene N. Smith was appointed in his place. On January 15, 1953, this court substituted Eugene N. Smith for M. P. Jones.

Plaintiff states fifteen questions are involved. In view of the disposition we have concluded to make of the appeal not all of them need be discussed. The decision turns upon questions 1, 11 and 12. They are as follows:

"1. Is the Wichita City Fire Department subject to the Statute 13-701, G. S. 1949, requiring civil service?

"11. Does a City have any greater authority than is granted to it by statute?

"12. Are the discretionary duties of a City Manager limited to the laws and rules pursuant thereto?"

We shall consider question No. 1—Is the Wichita fire department subject to the statute 13-701, G. S. 1949, requiring civil service? In considering this question we will also consider the applicability and force to be given certain other applicable statutes.

Plaintiff quotes G. S. 1949, 13-701. It reads as follows:

"That in all cities of the first class having a paid fire department, said department shall by this act be placed under civil-service rules and regulations, and the governing body of such city shall provide by ordinance suitable rules and regulations for the government of such department, in compliance with this act; . . ."

Plaintiff points out that Wichita is a city of the first class and has a paid fire department—hence he argues is under the above statute. He points out that the section provides the governing body of the city shall provide by ordinance for civil-service rules and regulations. He argues that by the promulgation of Exhibit "A" the city complied with the mandate stated in G. S. 1949, 13-701, gave these rules and regulations the force of law and the administrative procedure provided herein for suspending, demoting or dismissing an employee from city service must be followed.

Whether G. S. 1949, 13-701 to 704 and Exhibit "A" construed together should be given the force contended for by plaintiff even if the city was operating under G. S. 1949, 13-701 is questionable. We shall first consider, however, whether the city is conducting its fire department pursuant to that section.

G. S. 1949, 13-701, has a long legislative lineage. It was first enacted by chapter 117 of the Laws of 1907. It applied to first-class cities having a population of less than 60,000, having a paid fire

department. It spoke of a mayor and council. The other provisions were substantially the same as now. By chapter 28 of the Laws of the Special Session of 1908, chapter 117 of the Laws of 1907 was amended by making the general provisions apply to all first-class cities and providing the provisions of the act should not apply to the chief of the fire departments, of cities having a population of more than 60,000. This statute remained that way until 1927. The other provisions remained the same. By chapter 112 of the Laws of 1927 the section was amended by providing that it should not apply to the chief of a fire department in cities having a population of more than 60,000 and less than 110,000. The other provisions remained the same.

We turn now to G. S. 1949, 12-1001 to 12-1036. This is the so-called city manager act. We are especially interested in G. S. 1949, 12-1014. The city manager act was first enacted by chapter 86 of the Laws of 1917. The first section of that chapter, now G. S. 1949, 12-1001, provided for its being adopted by cities at a special election. The city of Wichita adopted such a plan on March 9, 1917, and has operated under it ever since. It should be remarked here that in all the amendments made to G. S. 1949, 13-701, no reference to the city manager act were ever made. The city manager act was passed long after G. S. 1949, 13-701, was first enacted.

G. S. 1949, 12-1010, 1011, 1012 are the same today as when first enacted in 1917. They provided for the appointment of a city manager who should be responsible for the efficient management of the city's business and provided for fixing his salary.

G. S. 1949, 12-1014, being section 12, chapter 86, Laws of 1917, has undergone some amendments. At the beginning of the section it is provided:

"The manager shall be responsible for the administration of all of the affairs of the city. He shall see that the laws and ordinances are enforced. He shall appoint and remove all heads of departments, and all subordinate officers and employees of the city. All appointments shall be made upon merit and fitness alone; . . ."

The above provisions are the same as first enacted in 1917.

We find some provisions in G. S. 1949, 12-1014, designed clearly to protect the civil service status of employees in cities which should adopt the law after January 1, 1947. (See chapter 113, Laws of 1947.) We are not concerned with those provisions here. Section 12 of chapter 86 then provided that the city manager should have the option to require the appointment of a civil service commission.

G. S. 1949, 12-1014, confers this option on the city manager only in cases where a city not having a civil service law should adopt the city manager plan after January 1, 1947. This section also provided that such commission should be appointed as established by the provisions of G. S. 1935, 13-2201. That section is the so-called civil service law and is still in effect. Section 12 of chapter 86 of the Laws of 1917 next provided:

". . . And the governing board at the request of the manager, shall appoint civil service commissioners as is now or may hereafter be provided for by law for cities of the state of Kansas. He shall be responsible for the discipline of all appointive officers, and may, without notice, cause the affairs of any department or the conduct of any officer or employee to be examined. He shall prepare and submit the annual budget to the governing body and also keep the city fully advised as to the financial condition and needs of the city."

With the exception of the first word of the provision this is the identical provision now in G. S. 1949, 12-1014. So much care has been taken to state the legislative history of these two acts because it was desired to make clear that while since 1917, when the city manager act was enacted and the city of Wichita adopted its provisions, there have been several amendments to it with reference to civil service but no amendment has been made with reference to Wichita and civil service.

Chapter 117 of the Laws of 1907, the forerunner of G. S. 1949, 13-701, did not, of course, repeal chapter 86 of the Laws of 1917, the forerunner of G. S. 1949, 12-1014. Chapter 112 of the Laws of 1927, the last amendment of chapter 117, Laws of 1917, did not repeal G. S. 1949, 12-1014, because that section was finally reenacted and amended by section 1 of chapter 113 of the Laws of 1947. Clearly the last action of the legislature is controlling.

The inevitable conclusion is that the Wichita fire department is not subject to G. S. 1949, 13-701, but on the other hand is operating under G. S. 1949, 12-1001 to 12-1036, especially G. S. 1949, 12-1010, 1011, 1012, 1013 and 1014.

So much for the statutes.

G. S. 1949, 12-1014, clearly provides that the city manager shall appoint and remove all heads of departments and all subordinate officers and employees of the city. It makes him responsible for the discipline of all appointive officers. Thus he by the statute is responsible for the administration of all the affairs of the city. This clearly includes personnel matters.

We turn now to Exhibit "A." Plaintiff argues that G. S. 1949,

12-1014, conferred on the city manager the option to appoint a civil service commission; that defendant Jones did not exercise this option but instead provided for an advisory board. Plaintiff argues, however, that the manager is bound by the rules and regulations set out therein. This booklet is referred to as a "Personnel Manual." It, on the second page gives a list of what it refers to as Chief Administrative Officials. First the City Commission, next the Personnel Advisory Board, next The Employees Council, next the Personnel Director. After the introduction the booklet contains the following:

### "THE CITY MANAGER

"The City Manager is responsible for the efficient administration of the City's business. It is his duty to see that the laws and ordinances are enforced, to appoint and remove all officers and employees of the City, to prepare and submit the annual budget to the Commission, and to keep it fully advised as to the financial condition and needs of the City. The City Manager makes recommendations to the Commissioners, but he has no vote. All appointments made by the Manager shall be made upon merit and fitness alone."

Again on page 11 we find:

### "THE CITY MANAGER

"The General Statutes of Kansas (12-1014) provide that: 'The Manager shall be responsible for the administration of all affairs of the city. He shall appoint and remove all heads of departments and all subordinate officers and employees of the city. All appointments shall be made upon merit and fitness alone.'

"The City Manager will determine the major personnel policies for all employees under his supervision. In all cases his decisions on personnel matters will be final. It is his responsibility to carry out the legal requirements that all appointments be made 'upon merit and fitness,' and to require the observance of the principles of the merit system. Although the ultimate responsibility is that of the City Manager, the success of the personnel program described in this Manual also requires the participation and cooperation of other officials of the City."

Also the following:

"The Personnel Advisory Board shall be composed of five members, with over-lapping terms. . . . The duties and functions of the Personnel Advisory Board are as follows: (1) To receive, investigate and report to the appointing authority on any employee's complaint of discrimination and unfair treatment as to personnel matters; (2) Upon request of any appointing authority to advise it concerning personnel problems and policies; (3) To consider and advise on any matter submitted to it by the Personnel Director; and (4) To establish rules of procedure in conformity with the merit system of personnel administration."

The Employees Council is made up of twenty-one members

elected annually by secret ballot from ground groups of employees. The Personnel Director is appointed by the City Manager and serves at his pleasure.

There is a section entitled "Handling of Suggestions and Complaints." It states that an employee who feels aggrieved because of any action affecting his status should take his grievance to his immediate supervisor; if not satisfied he may take his grievance to his representative on the Employees Council. The section also provides:

"If the employee prefers to do so, he may take his complaint to the Personnel Director instead of taking it to his Employee Council Representative. In that case, the Personnel Office will arrange for the meeting described above."

Then if he is still not satisfied he may appeal to the Advisory Board. Then a hearing is provided for. We find this provision:

"The board takes the position that it is an advisory, and not a policy making body. Furthermore, the Board is not a judicial agency, and hence cannot challenge the legality of the rules and policies laid down by the Appointing Authorities. Instead, the Board must reach its decisions within the framework of the policies existing at the time the case to be decided arose. . . . He must show that the action complained of by him constitutes discrimination and unfair treatment. In appeals, the question under consideration is whether the appealing employee's conduct deserved the action taken against him, not whether his superior is a good executive."

Under the heading "Penalties and Terminations" we find a section entitled "Penalties." This deals with suspensions and demotions. The one entitled Dismissals reads as follows:

"Dismissals will be made for inefficiency, insubordination, habitual tardiness, or similar cause. A department director or division head may, at any time, recommend to the Appointing Authority that an employee be dismissed. Upon approval of the Appointing Authority, the department director or division head will give the employee a written notice of his dismissal, including the reason therefor, and will send a copy of the notice to the Personnel Director. A regular or permanent employee, upon dismissal, shall receive a five-day notice of dismissal, or shall be paid for five days following the notice of dismissal. The employee may file a complaint with the Personnel Director, as provided in the chapter on Suggestions and Complaints."

These quoted sections are the ones with which plaintiff contends defendants did not comply and on account of which noncompliance plaintiff should be ordered reinstated.

We have concluded that the booklet Exhibit "A" is not entitled to any legal significance. This record does not disclose actually what official is responsible for its publication. Presumably the city

manager as his name is signed to the foreword. Be that as it may, there is no provision in the statute for any such board. It was not put into effect by any ordinance.

We do find a provision in the statutes that the City Manager shall appoint and remove all heads of departments and all subordinate officers and employees. The manager cannot by the publication and issuance of a booklet such as Exhibit "A" relieve himself of that responsibility. Actually it does not appear that he attempted or intended to do so. Exhibit "A" is written in such a manner by the general language used, as well as by the use of definite terms, as to indicate that it was the intention of the manager that Exhibit "A" should be advisory only.

Counsel for plaintiff point out bad consequences that will follow from such a holding. It is argued Wichita has no civil service whatever if such be the law. Such is actually the case. It seems clear the legislature intended such to be the situation. The city manager act has been amended a number of times since its enactment in 1917. As it stands today in G. S. 1949, 12-1014, there is a reference to civil service, but chapter 113 of the Laws of 1947, while making it possible for cities adopting the plan after January 1, 1947, to have civil service if the manager who exercised that option was careful not to bring Wichita under it.

The words "civil service" have a definite meaning when used in our law. They refer to the provisions of G. S. 1949, 13-2201 *et seq.*, known as the "Civil Service Act." This act has certain definite procedural provisions with which an ordinance passed by a city commission would have to conform. Certainly a booklet such as Exhibit "A" would not meet this requirement. The authorities cited by plaintiff are not in point here. They deal with a civil service where a city is actually operating pursuant to a civil service act such as G. S. 1949, 13-2201. The act under which Wichita is conducting its fire department as well as its other business is not a civil service act. The legislature has been careful that it should not be one. The provisions of Exhibit "A" have no binding force whatever on the city manager as far as city officers and employees are concerned.

Just as Wichita was about to adopt the city manager plan a mandamus action was filed in this court to compel the city officials to call an election for that purpose, pursuant to petitions filed. The election action was held pursuant to the alternative writ, and the

proposition carried. The action was carried on, however, to test the validity of chapter 86 of the Laws of 1917.

In the answer to the petition for a writ, one of the defenses made was that section 12 of the so-called city manager act (now G. S. 1949, 12-1014) is in contravention of, and repugnant to, the General Statutes of the state of Kansas, relating to civil service, and civil service boards, in cities of the first class, inasmuch as it gives to the so-called manager the option to operate under a civil service board, or not.

This court upheld the constitutionality of the act. After disposing of a number of questions raised we said:

"The civil service law has not the force of a constitutional provision; it may be repealed as to one class of cities and remain in effect in others. The legislature of 1911 (ch. 95, § 6) suspended its operation in all cities of less than 30,000 population governed by commissions. In the act now under consideration the manager is given the option to require the appointment of a civil service commission or not as he sees fit."

(See *The State, ex rel., v. City of Wichita,* 100 Kan. 399, 164 Pac. 290.)

The opinion is interesting to us here because it indicates the question of civil service under the new form of city government was a live one then. During the intervening years the legislature has met many times but has never taken any action to provide civil service for Wichita. The city manager statute provides a comprehensive and all-inclusive form of government for cities that adopt it. It fully covers the field. In the absence of direct legislative mandate this court will not deprive the city manager of any power or relieve him from any responsibility the statute places on him.

The charge is made in the petition that the action of the city manager in dismissing plaintiff from the fire department was arbitrary, in bad faith, unauthorized, unlawful and contrary to plaintiff's rights. Without conceding plaintiff's right to raise these charges, based on Exhibit "A" we have examined this record and have concluded, the facts as generally admitted do not sustain them in view of the broad power conferred upon the city manager.

It follows the judgment of the trial court is affirmed.