No. 41,667

Dana E. Dorst, *Appellant* and *Cross Appellee*, v. City of Chanute, a Municipal Corporation, and United States Fidelity & Guaranty Company, *Appellees* and *Cross Appellants*.

(345 P. 2d 698)

Opinion filed November 7, 1959.

*Morris Matuska*, of Pittsburg, and *Charles E. Henshall*, of Chanute, argued the cause and were on the briefs for appellant and cross appellee.

*George W. Donaldson* and *Robert L. Briley*, of Chanute, argued the cause, and *Joe F. Balch*, of Chanute, were with them on the briefs for appellees and cross appellants.

The opinion of the court was delivered by

Fatzer, J.: This is a workmen's compensation case. The principal question presented is whether the injury and disability sustained by the workman and found to exist, is covered by the provisions of the Workmen's Compensation Act. The workmen's compensation commissioner made findings of fact and denied an award of compensation. Upon appeal to the district court, the findings and conclusions of the commissioner were adopted and affirmed in all respects.

Dana E. Dorst, the injured workman, is the appellant and cross-appellee and will be referred to as the claimant. The appellees and cross-appellants are the city of Chanute, referred to as the city, and the United States Fidelity & Guaranty Company, referred to as the insurance carrier.

The findings and conclusions of the workmen's compensation

commissioner, omitting the caption, appearances, stipulations, and summary of the evidence, which were adopted by the district court, are as follows:

"It is found, in addition to the admissions and stipulations of the parties that: (1) the claimant herein was employed for the City Fire Department and he was asked to assist in the filling of certain fire extinguishers in the City of Chanute; (2) that he was injured on April 4, 1957, by accident, and as a result of that accidental injury he has been and is presently temporarily totally disabled; (3) that his average weekly wage was $80.40 (16.08 x 5).

"The City of Chanute filed an election to come under the Workmen's Compensation Act of Kansas, which election was filed on May 17, 1939; said election, not having been withdrawn, is presently in effect. The election which was filed specifically enumerated and outlined the operations which were to be included in said election.

"Section 44-505 of the General Statutes of Kansas, 1949, provides that any city shall have the power to designate the employees of which of its departments are to accept the provisions of the Act. The City in this case has clearly fulfilled the requirement of the statute. Nowhere in the election was the fire department mentioned. The claimant's position is that he was an employee of the city, and under the election would be included in the specific item which provides for coverage of municipal, township, county, or state employees N. O. C. (not otherwise classified).

"It appears to the Commissioner that it was not the intent of this election to cover all employees of the City, or there would have been no reason to have specifically listed operations which were to be included, and the election would merely have read, 'City of Chanute—all employees.' The fire department, being a large department of the City, would have had a separate classification and would not have been included in the general catch-all listing just discussed.

"There is no liability for workmen's compensation unless the City has elected that coverage. The Commissioner finds that it did not elect coverage for the fire department and that this employee was an employee of the fire department and hence, not an employee of the City and covered under the Workmen's Compensation Act. To give this claimant coverage under these circumstances would be to nullify the effect of the statute, whereas the statute has given cities and counties the right to designate those employees that they desire to be covered by workmen's compensation insurance. It is found, therefore, that an award of compensation should be denied for the reasons discussed."

The essential facts upon which the commissioner made his findings and conclusions are not in dispute. The pertinent portions are summarized: For many years the city has operated under the City-Manager Plan of government (G. S. 1949, 12-1001, et seq.) and was so operating at the time of the claimant's injury.

The fire department of the city consists of a fire chief and ten regular firemen who are employees of the city. The ten firemen

are divided into two shifts of five men each. Each shift is on duty twenty-four hours and off duty twenty-four hours. The fire department has fourteen men listed as auxiliary or volunteer firemen for emergency service, of which the claimant was one.

For many years it has been the annual practice of the fire department to offer its service in checking, filling and repairing fire extinguishers of merchants and residents of the city. A minimum service charge of $1 was made for servicing each extinguisher and additional charges were made according to the service rendered. The day selected for the service was publicized by a news article in the Chanute newspaper advising the day the service would be available. The city officials were aware of this annual service and that a charge was being made. No one was required to accept the service, but it was made available to reduce fire hazards to business properties and homes.

The fire extinguishers were picked up by off-duty firemen using a truck owned by the city and were brought to the fire station where they were serviced by the on-duty firemen under the supervision of the fire chief. After the extinguishers were serviced, they were replaced on the city truck and returned by the off-duty firemen to the owners. A list of customers was kept from year to year by the fire chief and this list was used by the driver of the truck who collected the cash and checks from the owners in payment for the service. Chemicals and needed supplies were purchased from the city and it was reimbursed from funds collected; the balance of the money was then divided by the fire chief among the ten firemen and himself in eleven equal amounts. No part of the money collected was ever paid to the city treasurer.

On April 3, 1957, the claimant was visiting the firemen at the fire station. Claimant testified the fire chief said, "Well, the boys are going to have their annual pickup of fire extinguishers tomorrow. You can carry a fire extinguisher, can you not?" Claimant said, "Yes, sir," and the fire chief said, "How would you like to help the boys and pick up a little change?" Claimant said, "That would be fine." The fire chief testified, "I said he could take my place because I don't want to climb the stairs. I explained that we pay for the chemicals out of what we take in and then divide eleven ways." The claimant further testified, "No one represented to me that I was being employed by the City of Chanute in performing this service."

The following morning the claimant reported for work at the fire station. A pick-up truck owned by the city park department was used to pick up and deliver fire extinguishers. As in the past, the fire extinguishers were brought to the fire station which is located in the Municipal Building, where the needed service and repairs were performed. During the day some 120 fire extinguishers were serviced and returned to their owners. The fireman driving the truck collected cash and checks for the service, which he turned over to the fire chief. Checks were payable to "Chanute Fire Department," or to "Fire Department," and were endorsed by C. W. Brennan, the fire chief, "Chanute Fire Department, C. W. Brennan." No refund was made in 1957 for chemicals used, and the fire chief divided the money received on April 4, 1957, in eleven equal amounts of $16.08 and paid that amount to the ten on and off-duty firemen and the claimant. The fire chief did not participate in the distribution.

About 4:30 p. m. on April 4, 1957, while returning from a delivery of fire extinguishers the claimant was riding in the back of the pick-up truck. As the truck pulled up to park at the fire station, claimant attempted to step backward off the back end while it was still moving. As he stepped back he lost his balance and was thrown to the concrete pavement. He was rendered unconscious and received serious injuries to his back and head.

Although the city had notice of claimant's injury and he made written claim for compensation within the time prescribed, neither the city nor the insurance carrier has paid any compensation or medical expense.

In view of conclusions hereafter announced, it is unnecessary that we discuss and decide claimant's principal contention that, since the trial court found the relationship of employer and employee to exist between him and the fire department—an agency of the city, he received personal injury while engaged in work of a proprietary function of the city, and for that reason the city is liable under the act notwithstanding it had excluded employees of the fire department when electing to come under the provisions of the act.

We turn to the city's and the insurance carrier's cross-appeal wherein they assert there was no substantial evidence to sustain the findings of the trial court that the claimant was an employee of the fire department at the time of his accident. Whether findings of fact made by a trial court are supported by substantial evidence is a

question of law as distinguished from a question of fact (*Pinkston v. Rice Motor Co.*, 180 Kan. 295, 299, 303 P. 2d 197, and cases cited therein).

It has been repeatedly held that the liability of an employer to his employee under the act is a liability arising on contract (*Baker v. St. Louis Smelting & Refining Co.*, 145 Kan. 273, 280, 65 P. 2d 284; *Leslie V. Reynolds,* 179 Kan. 422, 427, 295 P. 2d 1076), and it is essential that the accident which causes injury to a workman arise "out of" and "in the course of" the employment (G. S. 1949, 44-501). These terms are used in the conjunctive and both conditions must exist (*Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 34 P. 2d 542). The term "workman" is defined in G. S. 1949, 44-508 (*i*) as follows:

" 'Workman' means any person who has *entered into the employment of or works under contract of service or apprenticeship with an employer.* . . ." (Emphasis supplied.)

Did the claimant's injuries arise out of and in the course of his employment with the city? In other words, was the claimant an employee of the city to render it liable under the act? We think not. The city was operating under the City-Manager Plan of government (G. S. 1949, 12-1001, *et seq.*). That act provides an all-inclusive, comprehensive, general plan for carrying on the government of the city. Under that act the city commissioners are directed to appoint a city manager who is responsible for the efficient administration of the city's business, and who holds his office at the pleasure of the commissioners (G. S. 1949, 12-1011). The duties and functions of the city manager are provided in G. S. 1949, 12-1014, which reads in part:

"The manager shall be responsible for the administration of all of the affairs of the city. He shall see that the laws and ordinances are enforced. *He shall appoint and remove all heads of departments, and all subordinate officers and employees of the city.* All appointments shall be made upon merit and fitness alone. . . ." (Emphasis supplied.)

The statute was construed in *Piper v. City of Wichita,* 174 Kan. 590, 258 P. 2d 253. That was an action in mandamus to compel the city manager and the chief of the fire department of the City of Wichita to restore to service a fireman whom the city manager had discharged. It was held the city was operating its fire department pursuant to the provisions of G. S. 1949, 12-1001, *et seq.,* the City-Manager Plan, and not pursuant to G. S. 1949, 13-701, and that the

action of the city manager in dismissing the plaintiff was not unlawful or in violation of his rights. It was further held:

"In an action such as that described in the first paragraph of the syllabus, it is held, the city manager has authority to appoint and remove all heads of departments and all subordinate officers and employees of the city." (Syl. ¶ 4.)

In the opinion it was said:

"G. S. 1949, 12-1014, clearly provides that the city manager shall appoint and remove all heads of departments and all subordinate officers and employees of the city. It makes him responsible for the discipline of all appointive officers. Thus he by the statute is responsible for the administration of all the affairs of the city. *This clearly includes personnel matters.*" (l. c. 597.) (Emphasis supplied.)

In the instant case, the city manager testified that during 1957 he did not appoint, engage or hire claimant to work in any capacity for the city and that he did not delegate or attempt to delegate authority to anyone to hire him to work for the city; further, that what money the firemen collected and distributed, and which fire extinguishers they filled, was their own responsibility and the city had no part of it. The claimant testified he did not at any time prior to his injury discuss with the city manager about the work of picking up fire extinguishers; that no one told or represented to him that he was being employed by the city to perform the service. The testimony further disclosed that no employees were hired for the city, not even casual workers to shovel snow, until the city manager authorized and approved the employment. Furthermore, there was no employment record of claimant in the city's files.

While opposite conclusions may be reached, the divergence of opinion is due, not to any change of fact but to varying concepts as to what in law makes a person an employee of a city of the second class operating under a City-Manager Plan of government. Under that plan the city manager is the only person who could have employed the claimant as an employee of the city (G. S. 1949, 12-1014; *Piper v. City of Wichita,* supra).

Although the essential facts are undisputed, it is only by the application of established legal principles and the statutes to those facts that a conclusion can be reached as to whether the claimant sustained the relationship of an employee of the city of Chanute and hence, was an employee of the fire department. That being the case—there being no dispute of the essential facts—it is clearly a question of law. We think it clear that, in view of the record

before us, the relationship of employer and employee did not exist between the claimant and the city. Consequently, his injury did not arise out of and in the course of employment and was not covered by the provisions of the Workmen's Compensation Act.

Other points have been raised by the claimant, but in view of the conclusion just announced, it is unnecessary to discuss and decide them.

The judgment of the trial court is affirmed as to the result of denying claimant an award under the Workmen's Compensation Act, and is reversed as to the finding that the claimant was an employee of the fire department at the time of his accident.

It is so ordered.