No. 41,625

Roy E. Weast, *Appellant*, v. Bernard T. Budd, Individually, and City of Parsons, Kansas, a Municipal Corporation, *Appellees.*

(349 P. 2d 912)

Opinion filed March 5, 1960.

*Gerald D. Lasswell*, of Wichita, argued the cause, and *Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr., Cliff W. Ratner, Edmund R. Learned, James R. Barr, Frank W. Hylton* and *R. R. Barnes*, all of Wichita, were with him on the briefs for appellant.

*Glenn Jones*, of Parsons, argued the cause and was on the briefs for appellees.

The opinion of the court was delivered by

Fatzer, J.: This was an action to recover damages from the city of Parsons, Kansas, and Bernard T. Budd, the city manager, alleged to have been sustained by the plaintiff as a result of the

city's commencement and abandonment of an eminent domain proceeding to take his entire farm for water works improvement. The defendants filed a motion to strike certain allegations of the plaintiff's second amended petition, which was sustained in part, and the plaintiff has appealed.

The allegations of the second amended petition are briefly summarized: On September 18, 1957, pursuant to proper resolution and ordinance and applicable statutes of the state of Kansas, the defendant city commenced an eminent domain proceeding in the district court of Neosho County, to condemn the plaintiff's 100-acre farm, together with other lands, for a water reservoir. Commissioners were appointed by the district court to assess damages for the land to be taken, and, on October 16, 1957, after giving notice to the landowner, met at plaintiff's farm for that purpose. Bernard T. Budd met with the plaintiff and the commissioners at that time.

On November 19, 1957, and within ten days after the commissioners filed their report of appraisement with the clerk of the district court, the city, by resolution pursuant to G. S. 1949, 26-206, abandoned the eminent domain proceeding to all of the plaintiff's farm except a two-acre strip of land.

Between the time of the commencement of the eminent domain proceeding and its abandonment, the plaintiff was told, informed, instructed and directed by Budd that the city was taking and would take his entire farm. The plaintiff relied upon Budd's representations and instructions that he not cut his sorgo crop, which he was then prepared to do, since its value would be included in the commissioners' award; that he immediately remove himself, his family, and his 77 head of cattle from his farm and do no further work on a gas well then being drilled on the farm, all of which resulted in the loss of his sorgo crop destroyed by frost on or about October 20, 1957; loss from the forced sale of his 77 head of cattle because he had no feed for them; loss from being unable to use his growing rye, wheat and barley crops as pasture; loss of the gas well by reason of its caving in because plaintiff's lessee did no further work on it, and expenses incurred in trying to find a place to move. Plaintiff prayed for damages against both defendants in the amount of $3,000 for loss of the sorgo crop, $2,400 for loss of rye, wheat and barley pasture, $8,700 for loss from the sale of his cattle, $10,000 for loss of the gas well, and $500 for expenses incurred in trying to find a place to move.

The allegations stricken pertain to the loss of the sorgo crop, loss of the rye, wheat and barley pasture, and loss by the forced sale of the cattle. The motion was overruled as to both defendants with respect to expenses incurred by the plaintiff in finding a place to relocate, and the allegation concerning the loss of the gas well was sustained as to Budd but overruled as to the city.

Since the allegations stricken involve the merits of the action or some part thereof, the order sustaining the motion to strike is an appealable order. This court has consistently held that where allegations in a petition are stricken on order of the trial court, which involve the merits of the cause of action, the order to strike is an appealable order and is equivalent to an order sustaining a demurrer (*Norman v. Railway Co.*, 101 Kan. 678, 168 P. 830; *Grain Co. v. Cooperative Association*, 109 Kan. 293, 198 P. 964; *Fox v. Ryan*, 121 Kan. 172, 246 P. 520; *G. S. Johnson Co. v. N. Sauer Milling Co.*, 148 Kan. 861, 84 P. 2d 934; *Pulliam v. Pulliam*, 163 Kan. 497, 183 P. 2d 220, 1 A. L. R. 2d 418). See, also, the extensive note of the Kansas cases cited in the annotation in 1 A. L. R. 2d 422-435.

In determining the correctness of the trial court's ruling with respect to the city, this court is required to determine in the first instance the liability of the city, if any, to the plaintiff. In other words, the basic question resolves itself to whether the action can be maintained against the city. In view of conclusions hereafter announced, it is unnecessary to state the grounds of the motion to strike which was sustained by the trial court.

Since the second amended petition alleged the city commenced a proceeding in eminent domain to acquire land for water works improvement, and inasmuch as it was further alleged the proceeding was abandoned by the city by proper resolution within ten days after the commissioners filed their appraisement in the district court of Neosho County, and, assuming, *arguendo*, that the plaintiff sustained the damages alleged, the question arises, is the city liable?

The answer to the question is conditioned upon the answer to the further query: In what capacity was the city acting? If it acted as an agent of the sovereign upon a subject of general public concern, dissociated from any private, proprietary right, it shares the sovereign's immunity from suit (*Edson v. Olathe*, 81 Kan. 328, 105 P. 521, 36 L. R. A. (NS) 861, Writ or Error denied 222 U. S. 187, 56 L. Ed. 155, 32 S. Ct. 47; *Edson v. Olathe*, 82 Kan. 4, 107 P. 539, 56 L. Ed. 155, 222 U. S. 187, 32 S. Ct. 47).

It is unnecessary to write a treatise on the law of eminent domain. Suffice it to say eminent domain is the right to take private property for public use without the owner's consent upon payment of just compensation. The right is an inherent power of the sovereignty and comes into being with the establishment of government and continues as long as the government endures (1 Nichols, Eminent Domain, 3d ed., § 3.1, p. 185), but its exercise may be limited by the constitution (*Glover v. State Highway Comm.*, 147 Kan. 279, 285, 77 P. 2d 189). Except as so limited, it may be exercised for any public purpose designated by the legislature and in the manner it prescribes (*Glover v. State Highway Comm.*, supra; *Sutton v. Frazier*, 183 Kan. 33, 40, 325 P. 2d 338). While a municipal corporation has no inherent power of eminent domain (1 Nichols, Eminent Domain, 3d ed, § 3.221 [3], pp. 245, 246), the legislature of Kansas has delegated that power to all cities of the state "to condemn private property or easements therein for the use of the city for any purpose whatsoever." (G. S. 1949, 26-201.) Likewise, the legislature has empowered cities to abandon an eminent domain proceeding (G. S. 1949, 26-206) if the governing body deems the city aggrieved by the appraisement, assessment of damages or award of the commissioners, by the adoption of a resolution within ten days after the filing of the commissioners' report (*State v. Nelson*, 126 Kan. 1, 266 Pac. 107; *State v. Boicourt Hunting Ass'n*, 183 Kan. 187, 326 P. 2d 277; *Board of Park Commissioners v. Fitch*, 184 Kan. 508, 518, 337 P. 2d 1034).

Since the power of eminent domain is an inherent power and springs from the necessity of government, it is exercised by a municipal corporation only as a governmental power or function irrespective of the purpose for which the property acquired for public use is to be put (29 C. J. S., Eminent Domain, § 87, pp. 878, 879). Without passing upon the question whether the city would be engaged in a proprietary function if the plaintiff's property had been taken and subsequently devoted to a water works improvement, we are of the opinion that the city's commencement of the eminent domain proceeding *to acquire the property* was the exercise of a delegated sovereign power and was carried on as a governmental function. The same was true with respect to the resolution abandoning that proceeding. In passing that resolution the city commissioners were acting by and under authority of law (G. S. 1949, 26-206) and in the exercise of a legal right of the city in carrying

out a governmental function. It follows that since the city utilized none but its governmental powers, it was not acting in its proprietary capacity in commencing and abandoning the eminent domain proceeding.

Assuming, without deciding, that the statements, representations and instructions of Budd were tortious, it has been consistently held by this court that a city is not liable for negligent acts or misconduct of its officers or employees when acting in the performance of its governmental function absent a statute expressly imposing liability. The rule is based upon the doctrine that the state is not liable except as made so by statute, and that municipalities, as an agent of the sovereign, when acting in a governmental capacity, are arms of the state and likewise not liable. A few of our many cases on this point are: *Bruce v. Kansas City*, 128 Kan. 13, 276 P. 284; *Kretchmar v. City of Atchison*, 133 Kan. 198, 299 P. 621; *Wray v. City of Independence*, 150 Kan. 258, 92 P. 2d 84; *Parker v. City of Wichita*, 150 Kan. 249, 92 P. 2d 86, and *Perry v. City of Wichita*, 174 Kan. 264, 255 P. 2d 667. While this court has recognized there are exceptions to this rule arising out of a city's creation or maintenance of a nuisance, or with respect to defects in public streets, none of those exceptions are of consequence here.

It follows that the city is not liable in damages for plaintiff's alleged injuries in the absence of a statute imposing such liability, and, at the present time, no such statute exists.

The city had no right under the statute (G. S. 1949, 26-201 *et seq.*) or the proceeding it had taken, to the possession of any part of the plaintiff's land. It had no lawful right to use or occupy the land. In this connection, we point out that the second amended petition did not allege the city or its officers, agents or employees entered upon the plaintiff's land or that they took possession of it. The plaintiff concedes in his brief that they did not, and that he remained in possession and did not remove himself from his farm.

The City-Manager Plan of Government (G. S. 1949, 12-1001, *et seq.*) places the administration of the city's business in the hands of the city manager (G. S. 1949, 12-1011), who is responsible for the administration of all the affairs of the city (G. S. 1949, 12-1014). In the classification of powers, the duties exercised by the city manager are not legislative (*State, ex rel., v. Jacobs*, 135 Kan. 513, 515, 11 P. 2d 739). Hence, his duties are administrative or executive.

(*Dorst v. City of Chanute,* 185 Kan. 593, 597, 345 P. 2d 698), and are governmental or discretionary as distinct from being ministerial. In the performance of his duties as prescribed by the City-Manager Plan, he is immune from personal liability by reason of negligence or misconduct (*Wolf v. Fidelity & Deposit Company of Maryland,* 174 Kan. 402, 406, 256 P. 2d 862; *Wommack v. Lesh,* 180 Kan. 548, 552, 305 P. 2d 854).

In *Rose v. Board of Education,* 184 Kan. 486, 337 P. 2d 652, it was held that the janitor of the board of education, who was burning out a tree stump on the play grounds of a public school and who left live fire and coals in the hole in the stump with a covering of ashes over the top, was liable for personal injuries sustained to a six-year-old boy who stepped into the live coals. The distinction between the instant case and the Rose case is that Budd's duties are prescribed by statute and are governmental, while the janitor's duties were merely ministerial.

As has been determined, the city was acting in a governmental capacity when it commenced and abandoned the eminent domain proceeding. As city manager, Budd was responsible to see that the ordinances of the city were enforced and carried out (G. S. 1949, 12-1014), and in conferring with the court's commissioners and the plaintiff at the farm on October 16, 1957, he was carrying out those duties. Budd was a city officer acting for the city. Consequently, in seeing to it that the ordinances of the city were carried out he was performing an executive or administrative function and, in the absence of a statute imposing liability, any injuries the plaintiff may have sustained as a result of the city's or Budd's actions were *damnum absque injuria,* and the trial court did not err in sustaining the motion to strike the items of damages heretofore enumerated.

The judgment is affirmed.