[Civ. No. 39829. First Dist., Div. Four. Mar. 9, 1979.]

LORIS O. JOHNSON et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

COUNSEL

Morgan, Beauzay, Hammer, Ezgar, Bledsoe & Rucka, Morgan, Zazueta, Morgan, Towery, Morgan & Spector and W. Robert Morgan for Plaintiffs and Appellants.

Harry S. Fenton, John P. Horgan, Robert J. DeFea, Kenneth G. Nellis, Thomas C. Nagle and Robert R. Buell for Defendant and Respondent.

Evelle J. Younger, Attorney General, R. H. Connett and E. Clement Shute, Jr., Assistant Attorneys General, and Richard C. Jacobs, Deputy Attorney General, as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**CHRISTIAN, J.**—Loris O. Johnson and Vonda Johnson appeal from a judgment of dismissal which was rendered after the court sustained a demurrer to their complaint for inverse condemnation.

Appellants alleged that they own property near the proposed route of the Guadalupe Freeway, a project being planned by respondent State of California. The project originated in 1960 as a proposed expressway to be

built by the City of San Jose and the County of Santa Clara. A three-mile expressway section of the route, between Bayshore Freeway and Coleman Avenue, was constructed with local funds. In 1961, the State of California agreed to meet the cost of construction if the city and county would acquire the necessary rights-of-way. In 1969, primarily because of rapidly escalating land costs, it became necessary for the state to assume the responsibility for right-of-way acquisition. According to the tentative plans, approximately 280 parcels would be required for the project. During the 1960s, the City of San Jose and the County of Santa Clara acquired 180 parcels of land.

In the area of appellants' property, certain parcels of land were acquired by the city and county in 1966 and 1967, and two parcels were purchased by the state in 1971. One additional parcel was purchased by the state in 1974, and two excess parcels were sold by the state in 1973 and 1975.

Due to severe funding cutbacks in the state highway program, the future of the proposed route has become uncertain. Acquisition of additional rights-of-way and actual construction of the proposed freeway are not now planned for at least 7 years, and construction may be 10 to 20 years away. It is currently anticipated that construction will proceed in three stages; appellants' property would be required for the third stage of construction.

Appellants allege that there has been a taking and damaging of their property without the payment of just compensation, in violation of article I, section 19, of the California Constitution. The theory is that the state has acted unreasonably in issuing precondemnation statements, in purchasing property adjacent to appellant's property, and in unreasonably delaying eminent domain proceedings against appellants. Appellants allege that, by reason of the state's conduct, they have lost a valuable tenant and have been unable to lease their property. Appellants allege that they have been damaged in the sum of $1,250 per month from June 1, 1975.

Relying on *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345], appellants contend that they have stated a cause of action for inverse condemnation and that the trial court erred in sustaining respondent's demurrer. In *Klopping*, the City of Whittier had actually initiated condemnation proceedings, but then dismissed the suit when the city became involved in other litigation jeopardizing funding

for the property. The resolution of the city authorizing the dismissal of the condemnation suit simultaneously declared the city's firm intention to reinstate the condemnation proceedings when and if the other litigation was terminated in the city's favor. Plaintiffs sued in inverse condemnation, alleging that "because of the condemnation cloud hovering over their lands, they were unable to fully use their properties and that this damage, reflected in loss of rental income, should be recoverable." (*Klopping* v. *City of Whittier, supra,* 8 Cal.3d at pp. 45-46.) The Supreme Court held that if the city had acted unreasonably in precondemnation activities, either by unreasonably delaying eminent domain proceedings or by other oppressive conduct, the owner of the property was entitled to maintain an action in inverse condemnation. The court stated: "Accordingly, we hold that a condemnee must be provided with an opportunity to demonstrate that (1) the public authority acted improperly either by unreasonably delaying eminent domain action following an announcement of intent to condemn or by other unreasonable conduct prior to condemnation; and (2) as a result of such action the property in question suffered a diminution in market value." (8 Cal.3d at p. 52.) *Klopping* also made clear that not every decrease in value due to precondemnation activity is compensable. ■ However, when the public entity's precondemnation activities are unreasonable or oppressive and where the property in question has suffered a diminution in market value as a result of such unreasonable conduct, the owner of the property is entitled to compensation. (8 Cal.3d at pp. 51-52.)

Respondent points out that in this case no action for condemnation of appellants' property has been commenced, and there has been no resolution of the California Highway Commission authorizing condemnation proceedings; no assurance has been alleged that appellants' property will ever be acquired for highway purposes. Thus, there has been no unreasonable or oppressive precondemnation activity such as might give rise to an action in inverse condemnation. (See *Selby Realty Co.* v. *City of Buenaventura* (1973) 10 Cal.3d 110 [109 Cal.Rptr. 799, 514 P.2d 111]; *Smith* v. *State of California* (1975) 50 Cal.App.3d 529 [123 Cal.Rptr. 745].) The actions described in the pleadings are part of the legitimate planning process for a public improvement, and the legislative designation of a state highway route and the adoption of a location for the route by the highway commission are far short of a firm declaration of an intention to condemn specific property. Throughout the design phase of a highway project, alterations and modifications of the proposed project may occur; in recent years, with considerable frequency, route location adoptions have been rescinded by the highway commission as a

result of public disapproval of a project, environmental problems, or fiscal constraints. In some cases, routes have been deleted from the state highway system by the Legislature after considerable design work has been done on a proposed project and substantial amounts of right-of-way have been acquired. (See, e.g., *Jones* v. *People* ex rel. *Dept. of Transportation* (1978) 22 Cal.3d 144 [148 Cal.Rptr. 640, 583 P.2d 165].) Until design has been completed, environmental considerations have been accounted for, and actual condemnation resolutions are issued, it cannot be said with any certainty what property will be required for a project. *Klopping* was not intended to inhibit long-range planning of public projects or to require that property for proposed public improvements be purchased before it may be needed. (See *Smith* v. *State of California, supra,* 50 Cal.App.3d 529.)

■ As was the case in *Smith,* the freeway project in the present case is still in its planning phases. There has been no actual impairment of access such as justified the award in *Jones.* If the project is in fact constructed as currently proposed, plaintiffs' property will not be affected for 10 to 20 years. Any incidental impairment of plaintiffs' property rights as a result of the inevitable public knowledge of the state's proposed highway project is not such as to entitle them to compensation under *Klopping* v. *City of Whittier, supra,* 8 Cal.3d 39. Plaintiffs have not stated a cause of action in inverse condemnation; it was proper to sustain the demurrer to the complaint. (*Smith* v. *State of California, supra,* 50 Cal.App.3d 529.)

The judgment is affirmed.

Caldecott, P. J., and Delucchi, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 10, 1979.

---

*Assigned by the Chairperson of the Judicial Council.