(619 P.2d 150)
No. 51,006

CONSULTATION, INC., *Appellant,* v. CITY OF LAWRENCE, KANSAS, a
Municipal Corporation, *Appellee.*

Petition for review denied January 23, 1981.

Opinion filed November 7, 1980.

*John R. Hamilton* and *John R. Martin,* of Crane, Martin, Claussen, Hamilton &
Barry, of Topeka, for appellant.

*Gerald L. Cooley* and *John R. Hooge,* of Allen & Cooley, of Lawrence, for
appellee.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

MEYER, J.: Consultation, Inc. (appellant) owned land in southwest Lawrence. The City of Lawrence (appellee) condemned approximately 9/10 of an acre of appellant's tract on Clinton Parkway for right of way to provide access to Clinton Reservoir.

At the time of the taking, August 9, 1978, the tract was unimproved but water, sewer and gas lines were installed on the perimeter of the tract. To the south of the tract lay Prairie Meadows, a mid-range residential development. The highest and best use of the tract was agreed to be single-family residential property. Prior to the taking, multi-family zoning was denied, in part due to Prairie Meadows Homeowners Association's objection.

Appellee offered three comparable sales of tracts in the vicinity on which to base an opinion of value of the subject property.

The first was a 20-acre piece of property sold to a church five months before the taking. Appellant's expert testified that the sale

was not comparable because the seller sold it for the 1969 purchase price, plus taxes and 6 percent interest. Also, he stated the church was not purchasing the land for its highest and best use, and less than 4 acres were suitable for single-family residential development.

The second alleged comparable sale was the resale of 10 acres of the property bought by the church to developers for $55,000.00. Appellant's expert testified that such property was not comparable because only 50 percent of the property was usable for residential development as the other 50 percent was floodway and flood-fringe area.

The third alleged comparable sale was a sale by Columbia Union National Bank to developers of 9 acres for $50,000.00. Appellant's expert testified that the property was not comparable because of the same type of floodplain problem and the bank was a forced seller because it was not allowed to own land over five years.

The trial court ruled that these three properties were comparable properties, and, therefore, the court would exclude any testimony of value based on a per lot value, otherwise referred to as the developmental approach or the income approach.

The court-appointed appraisers had awarded $11,000.00 as the difference between the value of the property before and after the taking. Appellant appealed to the district court and the jury awarded appellant $13,300.00. Appellant perfected its appeal to this court.

The first issue presented was whether the trial court erred in excluding an expert's opinion of value based on the developmental method of valuation and also whether it was error for the court to prevent testimony of per lot value in closing argument.

"It is fundamental that private property shall not be taken or damaged for public use without just compensation. U. S. Const. 5th Amend.; K.S.A. 26-513(a)." *Urban Renewal Agency of Wichita v. Gospel Mission Church,* 4 Kan. App. 2d 101, 103, 603 P.2d 209 (1979).

The measure of damages for a condemnation of part of a tract of land is "the difference between the value of the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking." K.S.A. 26-513(c).

The basic dispute in this case is over the method of valuation.

"The three generally accepted methods of valuing real property for purposes of

condemnation are: (1) The market data approach based upon what comparable properties within the area have sold for at or near the time of taking; (2) the depreciated replacement cost or cost approach based upon what it would cost to acquire the land and to erect equivalent improvements, less depreciation; and (3) the income approach or capitalization of income based upon what the property taken is producing or is capable of producing in income at the time of the taking. *Ellis v. City of Kansas City,* 225 Kan. 168, 589 P.2d 552 (1979); *State Highway Commission v. Lee,* 207 Kan. 284, 485 P.2d 310 (1971)." *Urban Renewal Agency of Wichita v. Gospel Mission Church,* 4 Kan. App. 2d at 103.

Appellant claims the trial court's exclusion of the expert opinion of value based on the developmental approach was error.

First, we conclude that the trial court did not abuse its discretion in finding that the sales of property were comparable and admissible for use in giving an opinion using the market data approach.

In *City of Wichita v. Jennings,* 199 Kan. 621, 625, 433 P.2d 351 (1967), it was held that under the new rules of evidence the purchase price of a specific tract of neighboring land in condemnation proceedings may be testified to, provided the evidence was "not so remote as to time and distance as to be irrelevant. The determination of this fact is to be left to the sound discretion of the trial court. Most of such factors go more to the weight to be given the testimony than its admissibility."

In *State Highway Commission v. Lee,* 207 Kan. 284, 485 P.2d 310 (1971), this rule was applied to evidence of the price paid for the condemned real property on a sale prior to the proceedings. The court looked to the factors of whether the sale was bona fide, voluntary, not too remote in point of time, and if the conditions of the property and surrounding area were sufficiently similar to those on the date of the taking. The determination of those factors was held to lie within the trial court's discretionary powers. On appeal, it was held a determination that said property was too remote to be relevant should not be set aside, absent an abuse of discretion.

Likewise, a determination that there are other comparable real estate sales available is within the trial court's discretion.

We cannot say that there was an abuse of discretion in the instant case in finding that there were comparable sales. Two of the sales in question were for properties which were being sold for uses identical to the property being condemned. Furthermore, appraisers testified that they took into consideration the fact that

some of the comparable properties were floodplain areas in making their estimate of value.

Appellant also argues that there was error because the judge took judicial notice of the fact that the tract didn't seem to be unique based on his general knowledge of the farms in that area. The judge had lived in the area for 22 years. Certain judicial notice was approved in *Lee:*

"In *Knollman v. United States* (6th Cir. 1954) 214 F.2d 106, the court stated that it was the trial judge who knows the community, knows the areas of development, and is able to take judicial notice of expanding city limits." 207 Kan. at 291-2.

Here the trial judge went beyond the limited judicial notice approved in *Lee* in that he referred to his personal knowledge that there were comparable sales with which he was personally familiar, plus a partition case sale of which he had knowledge. The trial judge's statements related to his determination that comparable sales were generally available. Since the court correctly determined that specific sales offered by appellee were comparable, error, if any, was harmless.

Appellee argues that once the trial judge makes a determination that sales of comparable properties are relevant to the determination of value, the market data approach should be used to the exclusion of other methods of valuation.

In *Ellis v. City of Kansas City,* 225 Kan. 168, 172, 589 P.2d 552 (1979), the applicability of the three approaches was discussed:

"The first method listed, the market data approach, is by far the most commonly used method of appraisal. It is the method which *should be used* when there have been sales of comparable properties in the same locale near the time of the taking. The unit rule is applicable whenever the market data approach is employed. When, however, the property is so unique that there is no ascertainable market and there are no sales of reasonably similar or comparable property, the other methods—depreciated replacement cost, or capitalization of income—may be resorted to. These methods of appraisal do not require application of the unit rule." (Emphasis added.)

In both *Urban Renewal Agency of Wichita v. Gospel Mission Church* and *Ellis v. City of Kansas City,* the court stated, in dicta, that the market data approach should be used when there are sales comparable to property in the same locale near the time of the taking.

In both of these cases, however, it was not disputed by counsel that the property was unique and that there were no sales of comparable property, thus, other valuation methods were approved.

The developmental approach was first approved in an extensive opinion in *State Highway Commission v. Lee.* In that opinion, it was held:

"In a condemnation action the income approach to the appraisal of land taken by condemnation is the best method of determining value, when it is a known factor *and there are no other comparable real estate sales available."* (Emphasis added.) 207 Kan. 284, Syl. ¶ 13.

More specifically:

"The development approach in valuing suburban land imminently suited for subdivision and development begins with the selling price of the lots into which the acreage may be divided, which is then reduced by the developmental costs and discount factors more particularly described in the opinion. Where only a part of the owners' land is taken, the compensation and measure of damages are the difference between the value of the entire property based upon such calculations, and the value of that portion of the tract remaining immediately after the taking based upon such calculations." Syl. ¶ 15.

In *Lee,* the experts were first examined on the market data approach using comparable sales in arriving at their valuation testimony. They were then examined on direct examination by their own counsel on the development approach to show the similarity of the results obtained by using the two methods of valuation. The court, on appeal, approved the decision of the trial court to allow the expert's testimony following the income approach, *noting that the comparable sales were rather remote in time and of questionable probative value.*

Appellant argues that because the expert testimony in the case at bar was conflicting as to whether these sales used were comparable, the question of whether the developmental method was a better method should have been left to the jury. Thus, if the jury found that the sales were not comparable, they would have the testimony based upon the developmental approach to rely upon in arriving at their verdict.

Appellant cites *Lee* for the proposition that it is not error to submit testimony to the jury on both methods of valuation. The question of whether both methods should go to the jury was not addressed in *Lee* because it was not raised in that case. The appellate court approved the use of the developmental approach only after noting that the alleged comparable sales were of questionable value. Hence, *Lee* is not good authority for appellant's assertion.

The trial court allowed the appellant's witness to testify to the adaptability of the subject tract to development into lots and the costs of said development. He only excluded the valuation opinion based on developed lot sales.

We are persuaded that the valuation method of comparable sales is the preferred method. If there are comparable sales, then the evidence of value based on a developmental approach should be excluded.

We note that the statements that a market data approach should be used whenever there are comparable sales appearing in *Ellis* and in *Lee* are dicta. We conclude, however, that such statements made in said cases indicate, clearly, that our supreme court favors the market data approach when comparable sales are found to exist. We note that our court has taken a similar position, again in dicta, in *Urban.*

From the above we conclude that the trial court had ample evidence upon which to base its finding that comparable sales were available in the instant case and that therefore the market data method of damages was correctly applied. We find no error in the trial court's decision. Because of this conclusion we also hold that the trial court's prevention of arguing the per lot value method in appellant's closing argument was well within that court's discretion.

In its second issue appellant contends the trial court erred in restricting testimony claimed to be repetitious, but which, in fact, had not been testified to previously for the jury. The court had heard the testimony during the proffer of expert opinion.

Technically, appellant is correct in its assertion that the testimony was not repetitious. We note, however, that in comparing the testimony that was left out due to the objection, the only testimony missing was embellishment on the idea there would be increased traffic with additional traffic noise, additional litter, and severe congestion at certain periods of time. In this regard, it was stated in *Trimble, Administrator v. Coleman Co., Inc.,* 200 Kan. 350, Syl. ¶ 5, 437 P.2d 219 (1968):

"It is not reversible error to exclude evidence which is merely cumulative and does not add materially to the weight or clarity of that already given."

The alleged error was not reversible error.

Appellant's third claim of error is that the trial court erred in striking testimony of an expert, as hearsay, regarding what an owner had said about land.

Under K.S.A. 60-460, evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay and inadmissible. Appellant has not indicated that any of the exceptions are applicable in this case. What the owner told the expert with regard to his property was clearly hearsay. The trial court did not, however, exclude all testimony on the subject, but merely admonished the jury not to consider what Mr. Phillips told Mr. Haley. The court was correct in this ruling.

Appellant next claims that the trial court erred in refusing testimony of an expert regarding the value of property based on sales generally in the city and vicinity without specific comparable sales.

The expert stated that his proffered opinion was not based on specific comparable properties but was by using a "mosaic approach" based upon his general knowledge of the market and certain elements from "sales that transpired all over town." The trial court excluded such evidence. Sale of properties to be relevant must not be too remote in time and distance, must be bona fide, voluntary and the properties must be sufficiently similar to those of the condemned tract at the time of taking. *Lee,* 207 Kan. at 291. Since the testimony offered was not based on specific sales, the trial court had no basis on which to determine if the sales were relevant. There was no abuse of discretion in excluding such evidence.

Appellant's final issue is that the repeated interruptions of the trial judge constituted prejudicial error.

We have studied the transcript of the trial court and note that most of the interruptions of which appellant complains were questions asked of a witness to clarify a vague answer given by the witness. Other interruptions involved reminders to counsel that the income approach should not be dealt with in testimony and admonishing counsel to confine his questions to the market data approach. We note that these interruptions were more frequent than in most cases, but that many of them were necessary, and many of them were brought on by improper questions proposed by appellant. The trial judge did make one comment, which was both unnecessary and improper, when he said, "I don't want to try to educate the lawyer as a matter of law which

approach can be used when the Court has ruled what approach may be used." We conclude, however, that such remark does not approach reversible error.

Affirmed.