[Civ. No. 26262. Fourth Dist., Div. One. Feb. 7, 1983.]

CITY OF NATIONAL CITY, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Donald F. McLean, Jr., City Attorney, for Plaintiff and Appellant.

Richard G. Rypinski, Robert F. Carlson, Joseph C. Easley, Marie T. Durkee and Larry Thelen for Defendants and Respondents.

OPINION

**STANIFORTH, J.**—The City of National City (National City) appeals an order sustaining the demurrer of the State of California, Department of Transportation (Department) without leave to amend and judgment denying National City's petition for writ of mandate.

FACTS

National City sought to set aside the action of the California Transportation Commission (CTC) rescinding the State Highway Route 252 (Route 252) location and the release/disposal of acquired rights-of-way for this proposed highway. The dispute arose in this fashion: On April 28, 1965, the California Highway Commission (CHC) approved a notice of intention to consider the adoption of the location of Route 252. On June 29, 1965, the CHC adopted the present location of Route 252 based on a finding that such location was in the best interests of the State.

On December 11, 1967, National City entered into an agreement with the State of California and the State Department of Public Works, which provides for the construction of a portion of Route 252 within National City's boundaries. The remaining portion of the two-mile east-west highway was to be constructed within the City of San Diego.

An environmental impact statement (EIS) for the construction of Route 252 within the City of San Diego was prepared and approved on June 11, 1976. This portion of the project constitutes the 1.2 mile segment between Interstate 5 and 43rd Street in San Diego. Two years later (May 19, 1978) at the request of the San Diego City Council, CTC passed a resolution rescinding its freeway declaration for Route 252 between Interstate 5 and 43rd Street. The City Council of National City adopted its own resolution on June 13, 1978, *opposing* rescission of Route 252.

CTC later resolved to notice an intention to rescind that segment of the proposed highway, based on its determination the May 19, 1978 resolution had, in fact, retained the route adoption while nonfreeway options were being explored. Following a public hearing before the Review and Highway Committee of CTC on January 30, 1980, this committee adopted Resolution No. HRU 80-4 which rescinded the location of Route 252 between Interstate 5 and 43rd

Street and authorized disposal of rights of way previously acquired in that location. On March 28, 1980, CTC approved the resolution.

## DISCUSSION

## I

 National City's primary challenge to CTC's rescission of the Route 252 location and authorization of disposition of the rights of way is based upon the claim the State failed to comply with the California Environmental Quality Act (CEQA) (Pub. Res. Code, § 21000 et seq.). National City argues that throughout the entire proceedings to rescind this portion of Route 252 and release the rights-of-way the State agencies have failed to consider the potential environmental consequences of their action and no environmental impact report addressing such concerns was ever prepared as mandated by CEQA. National City cites Public Resources Code section 21065 to support its contention the Department's act to rescind the freeway location and release the rights of way constitute an activity directly undertaken by a public agency, therefore making that agency action a project under CEQA and thus requiring CEQA conformity. National City urges the rescission of Route 252 location and release of the previously acquired rights-of-way poses a significant deleterious effect on the environment.[1] CTC, however, contends its action is part of a project already evaluated in its earlier (and final) EIS; the actual sale of the rights-of-way constitutes a separate action which will in the future be negotiated by the Department. CTC asserts such future sale or disposition does not presently require an environmental evaluation.

 CEQA requires an environmental evaluation if an action potentially results in a physical change in the environment. The decision *not* to go forward would not cause a significant change in the environment. (See *City of Santa Clara, Cal.* v. *Kleppe* (N.D. Cal. 1976) 418 F.Supp. 1243, 1264.) Thus the failure of an agency to exercise its power, even assuming its power can have significant effect on the environment, is not the type of conduct that requires an EIS. (See *State of Alaska* v. *Andrus* (9th Cir. 1979) 591 F.2d 537, 541-542.)

 The CTC action rescinding the freeway location was addressed in the final EIS approved June 11, 1976, which identified the project as follows: "The proposed action is construction of 1.2 miles of new six-lane freeway *completing* State Route 252." (Italics added.) Thus the project as described was not the entire two-mile length of Route 252 but only the portion located in the City of San Diego. Moreover, the freeway location rescission rejected any further con-

---

[1]In analyzing this argument we must note there are actually two separate activities contemplated by the CTC; first, rescission of the 252 location; and second, disposition of the rights of way. These later activities will be examined separately. (See IV, *infra.*)

struction of the route and in fact CTC did not proceed with further construction of the highway. National City concedes if the State has not undertaken an activity or project, CEQA requirements would not be applicable.

Public Resources Code section 21080, subdivision (b)(5), exempts from CEQA any project "which a public agency rejects or disapproves." The decision to rescind the Route 252 location was a "no project" election or a project disapproval *which was identified as an alternative in the 1976 EIS.* The possibility of rescission of an adopted route is inherent in the possible election of the "no project" alternative and the consequences of not completing the construction of Route 252 in Southeast San Diego were addressed in that alternative. The evaluation considered the freeway construction already initiated and the impact the decision against further construction would have on the surrounding area, including any adverse traffic consequences. The evaluation stated that should a "no project" decision be made, the rights-of-way might be purchased by other governmental agencies and alternate uses of benefit to Southeast San Diego might be made of the property.

II

Citing Public Resources Code section 21166, National City contends triggering events have occurred since the initial preparation of the EIS which necessitate a later report. Section 21166 provides when an EIS has been prepared, no subsequent or supplemental environmental report will be required by the lead agency unless one or more certain specified events occurs, one of which is "[s]ubstantial changes are proposed in the project which will require major revisions . . . ."

National City argues unrebutted evidence shows changes have occurred since the initial EIS in 1976. Changes have occurred in the interrelated plans for freeway and street construction in affected areas as well as the traffic volume, circulation conditions, land use, population patterns, mass transportation systems and economic conditions in that area. The completed portion of the highway did cause such changes, but CTC's election not to proceed with the project involved no further change as that possibility was explained in the evaluation. Had National City been dissatisfied with the "no project" evaluation and traffic evaluation, it should have responded accordingly during the comment period of the draft EIS.

Implicit in the possibility of such future use would be the rescission of the freeway location. In sum, a further environmental evaluation of CTC's rescission action would be a redundancy and not within the contemplation and purpose of CEQA.[2]

---

[2]In determining what is a project within CEQA, California Administrative Code, title 14, section 15037 provides:

"(a) Project means the whole of an action, which has a potential for resulting in a physical

## III

■ National City next argues CTC's decision *to rescind* Route 252 was not supported by substantial evidence. This contention is without merit. Multiple studies were conducted by the City of San Diego concerning Southeast San Diego and the impact that Route 252 would have on this area if completed. Public hearings were held. Testimony in opposition to the rescission was heard. These various factors were considered by the commission before the final decision to rescind was made.

It is within the power of CTC to alter or change the location of a state highway if it is in the best interest of the state. (Sts. & Hy. Code, § 75, subd (a).) It is within the power of the CTC to drop a project completely. As was stated in *Johnson* v. *State of California* (1979) 90 Cal.App.3d 195 [153 Cal.Rptr. 185]:

"Throughout the design phase of a highway project, alterations and modifications of the proposed project may occur; in recent years, with considerable frequency, route location adoptions have been rescinded by the highway commission as a result of public disapproval of a project, environmental problems, or fiscal constraints. In some cases, routes have been deleted from the state highway system by the Legislature after considerable design work has been done on a proposed project and substantial amounts of right-of-way have been acquired. (See, e.g., *Jones* v. *People* ex rel. *Dept. of Transportation* (1978) 22 Cal.3d 144 . . . .)" (*Id.*, at pp. 198-199.)

It was correctly stated in *City of South Pasadena* v. *Goldschmidt* (9th Cir. 1981) 637 F.2d 677, 679:

"CTC appears to be the decisionmaking body. It has authority to 'select, adopt, and determine' the location for state highways, Cal.Sts. & Hy. § 75, and to 'alter or change' such locations. *Id.* § 71. . . .

". . . The California courts have held consistently that the state legislature vested CTC with the responsibility to select, adopt, and determine the location of state highways. [Citation.]."

## IV

The key question in any dismissal of a proceeding where a demurrer has been sustained without leave to amend is whether the petitioner has pleaded a factual

change in the environment, directly or ultimately, that is any of the following:

"(1) An activity directly undertaken by any public agency including but not limited to public works construction and related activities, . . ."

More specifically, subdivision (c) states:

"The term 'project' refers to the activity which is being approved and which may be subject to several discretionary approvals by governmental agencies. The term 'project' does not mean each separate governmental approval."

base which requires further proceedings or trial. A determination of this issue requires an analysis of the pleadings and the various documents filed to see whether this is purely a question of law or whether factual issues are involved which cannot be determined on a demurrer.

■ The State contends no factual issue is tendered by the pleadings because the disposition of the rights of way by the Department constitutes an activity quite distinct from the CTC rescission of the freeway route location.[3] CTC concedes an environmental evaluation will be needed when the sale or disposition takes place but until such time as the Department is ready to exercise its authority to dispose of the land an environmental evaluation would be premature. The CTC points to the fact that the City of San Diego has proposed to purchase the rights of way from the State and that the City of San Diego has undertaken the duty under Public Resources Code section 21151 to prepare the impact report: "All local agencies shall prepare, or cause to be prepared by contract, and certify the completion of an environmental impact report on any project they intend to carry out or approve which may have a significant effect on the environment . . . ."

The City of San Diego has prepared extensive studies concerning the unique problems presented by the area through which these rights of way presently run and the City is committed to improve the environment in this area in the ways identified by their studies.

Determination of the timing of the environmental impact report is reposed in the Department consistent with the overall purposes and objectives of CEQA. (*Mount Sutro Defense Committee* v. *Regents of University of California* (1978) 77 Cal.App.3d 20, 35-36 [143 Cal.Rptr. 365]; see also *Residents Ad Hoc Stadium Com.* v. *Board of Trustees* (1979) 89 Cal.App.3d 274, 291 [152 Cal.Rptr. 585].) To seek an environmental report from the State before the land is sold and then another from the purchaser would be needless duplication of effort and waste of resources.

## V

■ Finally, National City contends the State unilaterally modified the freeway agreement between National City and the State, in violation of agreement terms requiring mutual consent to modification.

[3]The release or sale of lands by the CTC is governed by Streets and Highways Code section 118 which states in part: "Whenever the department determines that any real property or interest therein, heretofore or hereafter acquired by the state for highway purposes, is no longer necessary for such purposes, the department shall offer in writing, to sell such lands . . . . [¶] Any such real property or interest therein may in like manner be exchanged, either as whole or part consideration, for any other real property or interest therein needed for state highway purposes."

*City of Fresno* v. *California Highway Com.* (1981) 118 Cal.App.3d 687 [173 Cal.Rptr. 671], is dispositive. Fresno alleged a freeway agreement entered into with the State represented a contract or promise to build a freeway. The court held:

"We hold the documents known as 'freeway agreements' do not obligate the state to build or complete a freeway.

". . . . . . . . . . . . . . . . . . . . . . . .

"As we interpret these agreements they provide for very limited obligations upon the part of the state and the city. . . .

"We do not find any language which legally obligates the state to commence or complete construction of any planned freeway. . . ." (*Id.,* at p. 694.) The *City of Fresno, supra,* cites *Smith* v. *State of California* (1975) 50 Cal.App.3d 529 [123 Cal.Rptr. 745], for the proposition that such an agreement is a "general plan," not "certain of implementation" and *Johnson* v. *State of California, supra,* 90 Cal.App.3d 195, for the precedent authorizing route deletion from the state highway system by the Legislature after considerable design work has been done and substantial rights of way have been acquired.

National City contends that the elements of equitable estoppel are present here requiring the state to complete the freeway or in the alternative to do something other than rescind the plan. This precise issue was addressed in *City of Fresno, supra,* and rejected (at pp. 697-698):

"We believe that to apply estoppel in this case against the state would contravene public policy and basic statutory and constitutional limitations. The limitations implicit in the statutory plan for freeway development have already been discussed. In addition, a judicial order requiring, in effect, an act of the Legislature to appropriate money for what is recognized as a discretionary purpose would infringe upon the doctrine of separation of powers. [Citation.]

"The cases indicate an estoppel should not be applied here even if the state *had* made an express promise to build the freeways. . . ."

National City is seeking judicial relief from a legislative decision foreclosing the building or completion of a freeway. An EIS may be required before any future disposition of rights of way, but to order an EIS now would be premature. There is no basis in the factual allegations made or the law cited requiring a reversal of the trial court's decision.

Judgment affirmed.

Brown (Gerald), P. J., and Work, J., concurred.

A petition for a rehearing was denied March 7, 1983.