No. 54,639

Lone Star Industries, Inc., and Crupper Transport Company, Inc., *Appellants*, v. Secretary of the Kansas Department of Transportation, *Appellee.*

(671 P.2d 511)

Opinion filed October 21, 1983.

*Michael A. Preston*, of McDonald & Dykes, of Overland Park, argued the cause, and *L. D. McDonald, Jr.*, of the same firm, was with him on the briefs for appellants.

*Ronald D. Garrison*, of Fallon, Holbrook & Ellis, of Kansas City, argued the cause, and *Reid F. Holbrook*, of the same firm, and *David G. Tittsworth*, chief attorney, Kansas Department of Transportation, were with him on the brief for appellee.

The opinion of the court was delivered by

McFarland, J.: On April 6, 1981, plaintiff Crupper Transport Company, Inc., commenced an action (81-C-1254) against defendant, Secretary of the Kansas Department of Transportation,

seeking damages for inverse condemnation (Count I) and requesting mandamus to compel defendant to institute condemnation proceedings for the taking of plaintiff's property (Count II). On November 30, 1981, plaintiff Lone Star Industries commenced a near identical action (81-C-4487) against the same defendant. Both plaintiffs were represented by the same attorney. The two cases were subsequently consolidated and both were dismissed on grounds plaintiffs had failed to state causes of action on either count on the respective petitions (K.S.A. 60-212[b][6]). Plaintiffs then filed a joint notice of appeal.

Before proceeding further, it should be noted that subsequent to the filing of the notice of appeal, but before the time of oral argument herein, defendant Secretary has instituted eminent domain proceedings against the property of plaintiff Crupper Transport Company, Inc., which is involved herein. Clearly all elements of damage arising from the taking which are legally compensable will be determined in the eminent domain action, thereby rendering Count I moot as to Crupper. The mandamus cause of action (Count II) seeking to compel defendant to initiate an eminent domain action is likewise moot. This appeal so far as it relates to plaintiff Crupper Transport Company, Inc., is declared moot and is dismissed.

We turn now to the remaining plaintiff, Lone Star Industries, Inc. Lone Star manufactures cement and cement products at Third and Bunker Streets in Kansas City, Kansas. In 1970 defendant's predecessor, State Highway Commission, announced its intention to acquire land in Wyandotte County for construction of Interstate Highway 670 (I-670). Among properties proposed for acquisition was an unspecified portion of plaintiff's property. Defendant's representatives discussed the project with Lone Star representatives but neither definite plans nor a timetable for acquisition was established. Representatives of plaintiff and defendant have, through the intervening years, negotiated relative to acquisition of plaintiff's property, but no agreement has been reached. The lengthy and unfruitful discussions and negotiations were, at least in part, the result of the fact the proposed highway would, relative to plaintiff's property, be an elevated roadway which would trisect plaintiff's land. The extent of the required taking and its effect on the operation of the business apparently have never been fully determined.

The first issue is whether the district court erred in dismissing Count I on the ground plaintiff had failed to state a cause of action therein.

Count I of plaintiff's petition seeks damages based on the theory of inverse condemnation suffered by plaintiff's business as a result of the delay of defendant in moving forward with the taking of plaintiff's property. Specifically, plaintiff contends:

"That due to said actions and inactions of the defendant and his representatives, the plaintiff has suffered a disruption of its business operation; has been limited in its ability to contract business and to bid for said business due to the uncertainty of the plaintiff's ability to produce its product and in light of the required penalty clauses to said contracts; and the plaintiff has suffered unauthorized entry upon its property by the defendant, his employees, agents and representatives."

The unauthorized entry referred to in said contention concerns defendant's intrusion onto plaintiff's property for purposes of surveying and the taking of core samples rather than actual construction of the highway.

At this point a discussion of the background and general principles of law relative to eminent domain and inverse condemnation is appropriate.

The Fifth Amendment to the United States Constitution prohibits private property being taken for public use without just compensation. While the Kansas Constitution does not contain an identical provision, with the exception of Art. 12, § 4, governing corporations, the Fifth Amendment prohibition is applicable to the states by way of the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 66 L.Ed.2d 358, 101 S.Ct. 446 (1980); *San Diego Gas & Electric Co. v. San Diego,* 450 U.S. 621, 67 L.Ed.2d 551, 101 S.Ct. 1287 (1981); *Panhandle Co. v. Highway Comm'n,* 294 U.S. 613, 618, 79 L.Ed. 1090, 55 S.Ct. 563, *reh. denied* 295 U.S. 768 (1935), *rev'g State Highway Comm. v. Panhandle Eastern P.L. Co.,* 139 Kan. 185, 29 P.2d 1104, *reh. denied* 139 Kan. 849, 33 P.2d 151 (1934). See also 26 Am. Jur. 2d, Eminent Domain § 8; and Nowak, Rotunda & Young, Constitutional Law, pp. 437-50 (1978). Further, the constitutional prohibition is codified in Kansas in K.S.A. 26-513(*a*) which provides private property shall not be taken or damaged for public use without just compensation. See also *Urban Renewal Agency of Wichita v. Gospel Mission Church,* 4 Kan. App. 2d 101, 103, 603 P.2d 209 (1979),

*rev. denied* 227 Kan. 928 (1980); and *Consultation, Inc. v. City of Lawrence,* 5 Kan. App. 2d 486, 487, 619 P.2d 150 (1980), *rev. denied* 229 Kan. 669 (1981).

Eminent domain, as a legal term and concept, apparently originated in the works of the seventeenth century legal scholar Grotius. See Grotius, De Jure Belli ac Pacis Libri Tres, ch. 20, § VII, ¶ 1 (1625), cited in 1 Thayer, Cases on Constitutional Law, p. 945 (1895), and Nowak, Rotunda & Young, Constitutional Law, p. 438. It is sufficient to say eminent domain is the right and power of government or lawfully designated authority to take private property for public use without the owner's consent upon payment of just compensation. *Weast v. Budd,* 186 Kan. 249, 252, 349 P.2d 912 (1960). The right is an inherent power of the sovereign and comes into being with the establishment of government and continues as long as the government endures, but its exercise may be limited by the constitution. 186 Kan. at 252; *Glover v. State Highway Comm.,* 147 Kan. 279, 285, 77 P.2d 189 (1938).

While eminent domain powers may only be exercised by the government or lawfully designated authority, a person having an interest in realty may compel a government to invoke those powers by bringing an action for inverse condemnation. Inverse condemnation is an action or eminent domain proceeding initiated by a person having an interest in realty rather than by the government condemner. It is available when private property has actually been taken for public use without formal condemnation proceedings and where it appears there is no intention or willingness on the part of the taker to bring an action to acquire the property. *Ventures in Property I v. City of Wichita,* 225 Kan. 698, Syl. ¶ 3, 594 P.2d 671 (1979).

Both eminent domain and inverse condemnation involve a "taking" of real property without the owner's consent but with compensation. However, a government may, by the exercise of its police powers, regulate private property but not be deemed to have taken it so as to require compensation. In *Lewis v. Globe Constr. Co.,* 6 Kan. App. 2d 478, 630 P.2d 179, *rev. denied* 230 Kan. 818 (1981), the Court of Appeals held a temporary closing of a street for repairs fell within the police powers of the government, not the powers of eminent domain. 6 Kan. App. 2d at 484. See also *Smith v. State Highway Commission,* 185 Kan. 445, 346

P.2d 259 (1959). If government imposes a restriction upon property which is too oppressive so as to deny the owner the use, benefit, and enjoyment of the realty, it may be deemed to have taken the land and be obligated to pay compensation. *Eldridge v. City of Palo Alto*, 57 Cal. App. 3d 613, 621, 129 Cal. Rptr. 575 (1976); and *Ventures in Property I v. City of Wichita*, 225 Kan. at 710. Finally, no damages are allowable for a mere threat to condemn. *Hood v. Chadick, County Judge*, 272 Ark. 444, 447, 615 S.W.2d 357 (1981).

Before a party may recover compensation it must establish the property in question is one in which it has an interest, *Wittke v. Kusel*, 215 Kan. 403, 524 P.2d 774 (1974), and there has been a taking. This court has previously defined "take" (or "taken") in Kansas eminent domain law to mean the acquiring of possession as well as the right of possession and control of tangible property to the exclusion of the former owner, with such title in fee or easement as the statute under which the proceeding is had provides. *Steck v. City of Wichita*, 179 Kan. 305, 313, 295 P.2d 1068 (1956); and *Foster v. City of Augusta*, 165 Kan. 684, 690, 199 P.2d 779 (1948). As noted in *Ventures*, 225 Kan. 698, strict adherence to this definition of "take" has been relaxed in recent times by this court in cases concerning lateral support (*Sanders v. State Highway Commission*, 211 Kan. 776, 508 P.2d 981 [1973]; see also Comment, *Property: Lateral Support—An Inversely Condemnable Property Right*, 13 Washburn L.J. 248 [1974]) and access (*McCall Service Stations, Inc. v. City of Overland Park*, 215 Kan. 390, 524 P.2d 1165 [1974]; and *Kohn Enterprises, Inc. v. City of Overland Park*, 221 Kan. 230, 559 P.2d 771 [1977]).

Plaintiff contends Kansas has so relaxed its concept of "taking" that defendant's actions of announcing, preparing plans for, and actual construction of some portions of the I-670 project have resulted in the "taking" of its property within the concept of inverse condemnation. In support of this argument plaintiff places heavy reliance upon *Ventures*, 225 Kan. 698, and also cites *Sanders v. State Highway Commission*, 211 Kan. 776, and *McCall Service Stations, Inc. v. City of Overland Park*, 215 Kan. 390, and certain cases from other jurisdictions.

The district court dismissed Count I on the grounds Lone Star had failed to allege a legally sufficient "taking" had occurred. In

so doing, the district court reasoned as follows: *(Note:* The memorandum opinion refers to *plaintiffs* throughout as both the Crupper and Lone Star cases were being decided.)

"The first count of each petition sounds in inverse condemnation. Plaintiffs claim that the defendant, in pursuing the construction of Interstate 670, announced the intention to construct in 1970 and over a period of time expressed the intention to take the property of the plaintiffs, in whole or in part, by eminent domain. Plaintiffs, meantime, have expressed the intention and necessity of expanding their facilities on the property affected. As a result of defendant's failure to speedily complete the proposed condemnation, the plaintiffs allege that their properties have been effectively taken from them, and pray for damages as a result of this inverse condemnation.

"Inverse condemnation has long been recognized in Kansas. *Cohen v. St. L., Ft.S. and W. Rld. Co.,* 34 Kan. 158, 8 Pac. 138 (1885); *[Brock] v. State Highway Commission,* 195 Kan. 361, 404 P.2d 934 (1965); *Wittke v. Kusel,* 215 Kan. 403, 524 P.2d 774 (1974). Plaintiffs admit, in page two of the Crupper 'Memorandum in Opposition to Defendant's Motion to Dismiss,' that for inverse condemnation to lie, it is usually required that the entity with eminent domain authority 'acquire possession of the property in question and to control the property to the exclusion of the owner.'

"Inverse condemnation will not lie unless a taking has occurred. See *Steck v. City of Wichita,* 179 Kan. 305, 295 P.2d 1068 (1956); *Foster v. City of Augusta,* 165 Kan. 684, 199 P.2d 779 (1948).

"But plaintiffs go on to argue that this standard has been eroded by *McCall Service Stations, Inc. v. City of Overland Park,* 215 Kan. 390, 524 P.2d 1165 (1974), in which a landowner was compensated for the denial of the reasonable access he had previously enjoyed; by *Sanders v. State Highway Comm.,* 211 Kan. 776, 508 P.2d 981 (1973), in which removal of lateral support was held to afford an action in inverse condemnation; and by *Ventures in Property I v. City of Wichita,* 225 Kan. 698, 594 P.2d 671 (1979), where the Supreme Court recognized a taking had occurred even though there was no physical possession by the governmental entity.

"The *Ventures* case, while factually quite different, is important to the disposition of the instant action because for the first time the Kansas Supreme Court discussed the question of whether or not the mere planning or plotting of a public improvement constitutes a taking or damaging of property affected. The Court stated:

" 'While the issue has never arisen in this context before our court, generally the mere planning or plotting in anticipation of a public improvement does not constitute a taking or damaging of the property affected.' *(Ventures,* p. 706)

"But these cases are all distinguishable from the case at bar. *McCall (supra)* was not an inverse condemnation proceeding at all, but instead an eminent domain condemnation proceeding from which the landowner appealed. In *Sanders (supra)* the Court held that the common right to lateral support was a right accompanying ownership, and could not be taken without compensation. Thus, while at first glance the case seems to support an action in inverse condemnation where there was no acquisition or taking of property, the theory on

which the case was decided was that a taking of a valuable property right had in fact occurred. *Ventures (supra)* likewise holds that a taking must occur for inverse condemnation to lie, and that requiring a property owner to reserve a portion of his land for public use in the distant future is such a taking.

"The cases cited by the plaintiffs simply apply the established principles of inverse condemnation to novel circumstances; they do not require abandonment of the principles. In the instant cases, no such novel circumstances intrude. While the plaintiffs may have felt themselves unduly inhibited in the proposed expansion of their facilities, they had at all times free and uncontrolled access to, and the use of their property. Some inconvenience must necessarily accompany the planning of new thoroughfares by governmental units, and it cannot be avoided. But to label all such interferences 'takings' by inverse condemnation would make public planning impossible.

"Plaintiffs mention and apparently rely on a California citation, namely *Klopping v. City of Whittier*, 8 Cal. 3d 39, 104 Cal. Rptr. 1, 500 P.2d 1345 (1972). Usually that particular state has been considered as liberally construing inverse condemnation issues. However, in reading other cases from that State, this Court found different interpretations.

"The Supreme Court of Kansas in *Ventures* discussed *Smith v. State of California*, 50 Cal. App. 3d 529, 123 Cal. Rptr. 745 (1975). In *Smith*, the plaintiff alleged that for seven years following the announcement of a plan by the condemning authority to acquire property for a public improvement no action had been taken. That as a result of the delay there was an actual taking of the property and by inverse condemnation. The California court stated:

" 'Without question, when the state embarks upon a plan to develop a freeway, because of the public airing which is legally attendant to such a project, marketability of property in the affected area is adversely impacted. On the other hand, invocation of the doctrine of inverse condemnation or the assessment of damages against the state upon the public announcement of the state's plan would result in acquisition of large amounts of property that may never be used and would inordinately increase the cost of any such project. The real result would be a severe hampering of the state's ability to undertake necessary and worthwhile improvements in our highway system.' (p. 536)

"More recent cases from California that discuss the issues of whether or not mere planning or plotting in anticipation of a public improvement constitutes a taking or damaging of property affected include *Johnson v. State of California*, 90 Cal. App. 3d 195, 153 Cal. Rptr. 185 (1979). The headnote from *Johnson* summarizing the holding states:

" 'Complaint filed by landowners, whose property was near proposed route of state freeway which was still in the planning stage and questionable due to severe funding cutback in state highway program, who contended that state had acted unreasonably in issuing precondemnation statements, in purchasing property adjacent to landowners' property, and in unreasonably delaying eminent domain proceedings against them, who alleged that they had lost a valuable tenant and had been unable to lease their property as result of state's conduct, but whose access had not been impaired, and whose property would not be affected for 10 to 20 years if project was in fact constructed, *failed to state cause of action in inverse condemnation*.' [153 Cal. Rptr. at 186] (Emphasis supplied.)

"The motion to dismiss is granted as to Count I of both petitions."

We agree with the rationale of the district court.

Before concluding this issue, however, *Ventures*, 225 Kan. 698, should be discussed in more depth. This court in *Ventures* was asked whether a restriction in a proposed platting of land to reserve a proposed highway corridor could amount to inverse condemnation of the land requiring compensation of the land-owner. In *Ventures*, plaintiff purchased land previously used for agricultural purposes immediately outside the city limits of Wichita. In December, 1972, plaintiff applied for a zoning change to permit it to develop the property as a residential subdivision. At the hearing on the application there was much discussion of a concept called the Northeast Circumferential, a state highway corridor which had been proposed and considered over the past twenty years. A proposed corridor extended over a portion of plaintiff's land. The zoning application was approved with the qualification a plat would not be submitted until the precise location of the highway was determined.

In 1976 the plaintiff, believing it had waited long enough, submitted a plat which did not include the proposed highway corridor. The Wichita Metropolitan Area Planning Commission (MAPC) informed plaintiff it would approve a plat of its land only for that area not set aside for the proposed highway. As for the land in the proposed corridor, Ventures could do nothing and would have to keep the land undeveloped until a decision was finally made where to locate the state highway. In response to the MAPC's decision Ventures brought a declaratory judgment suit under K.S.A. 60-1701, contending MAPC's denial of plaintiff's platting of its land, and the restriction a portion of the land be held in abeyance until the location of the state highway was determined, constituted a compensable taking. The district court denied plaintiff's action, finding plaintiff's only relief was pursuant to K.S.A. 12-712. We reversed and remanded the case with directions.

Speaking for the court, Chief Justice Schroeder observed while this court had frequently found inverse condemnation to have occurred when there had been a physical taking of property, *e.g.*, *Ellis v. City of Kansas City*, 225 Kan. 168, 589 P.2d 552 (1979); *In re Central Kansas Electric Coop., Inc.*, 224 Kan. 308, 582 P.2d 228 (1978); *Rostine v. City of Hutchinson*, 219 Kan.

320, 548 P.2d 756 (1976); and *Wittke v. Kusel,* 215 Kan. at 405-06; or where access rights had been impinged, *Kohn Enterprises, Inc. v. City of Overland Park,* 221 Kan. 230; and *Brock v. State Highway Commission,* 195 Kan. 361, 404 P.2d 934 (1965); or where rights to lateral support had been violated, *Sanders v. State Highway Commission,* 211 Kan. at 787; the question confronting the court in *Ventures* was whether a physical invasion of a landowner's property was necessary before there could be a compensable taking. 225 Kan. at 705, 706.

In *Ventures* this court proclaimed it adhered to the general rule of inverse condemnation, 225 Kan. at 707, that mere planning or plotting in anticipation of a public improvement does not constitute a taking or damaging of the property affected. 225 Kan. at 706. The crucial factor in *Ventures* which allowed recovery and which distinguishes the case from the general rule, and from the instant litigation, is that besides the plotting specifications the MAPC had coupled it with a legal restriction the landowner had to keep a certain portion of its realty undeveloped to facilitate a proposal to construct a state highway sometime in the indefinite future. Corpus Juris Secundum cited by the *Ventures* court, 225 Kan. at 706, has aptly noted:

"[T]he making and filing of a description or map of a street or highway, or other public improvement, is not a taking *unless the plotting is coupled with legal restrictions on the owner's use of the property.*" 29A C.J.S., Eminent Domain § 135, 537, citing *Lansburgh v. Market Street Ry. Co.,* 98 Cal. App. 2d 426, 220 P.2d 423 (1950), 21 A.L.R.2d 785. (Emphasis supplied.)

*Ventures* does not radically relax the concept of "taking," as asserted by the plaintiff herein. Rather, *Ventures* characterizes an exception to the general rule that mere plotting and planning in anticipation of a public improvement does not constitute a taking or damaging of the property affected *unless* such plotting and planning is coupled with a legal restriction on the landowner's use of the property.

We conclude the district court did not err in dismissing Count I on the basis plaintiff had failed to state a cause of action in inverse condemnation by virtue of the legal insufficiency of the alleged taking.

The second issue is whether the district court erred in dismissing Count II (mandamus claim) for failure to state a cause of action.

The district court, in dismissing Count II, reasoned:

"The second count of the petitions calls for the issuance of a writ of mandamus, directing the defendant to institute condemnation proceedings. A writ of mandamus will lie only when a public officer has a clearly specified duty, not involving discretion. The Court holds that such a clearly defined duty does not lie before the defendant, but rather a range of possibilities as to what course to follow in eminent domain proceedings. Where such discretion is involved, mandamus is not a proper remedy."

We held in the first issue a compensable "taking" has not occurred in regard to plaintiff's property inasmuch as the plotting and planning in anticipation of the public improvement was not coupled with a legal restriction on the landowner's use of the property. The public policy underlying such holding also compels that mandamus should not lie to compel the institution of eminent domain proceedings against plaintiff's property.

The district court was correct in concluding the defendant has no clearly defined duty to institute eminent domain proceedings under the circumstances here.

In *Arney v. Director, Kansas State Penitentiary*, 234 Kan. 257, 671 P.2d 559 (1983), the general rules relative to mandamus were stated as follows:

"K.S.A. 60-801 defines mandamus as a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law.

"It has uniformly been held that the remedy of mandamus is available only for the purpose of compelling the performance of a clearly defined duty; that its purpose is to require one to whom the writ or order is issued to perform some act which the law specifically enjoins as a duty resulting from an office, trust, or station; that mandamus may not be invoked to control discretion and neither does it lie to enforce a right which is in substantial dispute, and further, that resort to the remedy may be had only when the party invoking it is clearly entitled to the order which he seeks. (Following *Lauber v. Firemen's Relief Assn. of Salina*, 195 Kan. 126, 402 P.2d 817 [1965].)

"The only acts of public functionaries which the courts ever attempt to control by either injunction or mandamus are such acts only as are in their nature strictly ministerial, and a ministerial act is one which a public officer or agent is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed. (Following *Martin, Governor v. Ingham*, 38 Kan. 641, 17 Pac. 162 [1888].)" 234 Kan. 257, Syl. §§ 1, 2, 3.

The defendant had no clearly defined legal duty to institute

eminent domain proceedings against plaintiff's property. We therefore conclude the district court did not err in dismissing Count II of plaintiff's petition.

For its third issue, plaintiff contends the district court erred in consolidating its case with that of Crupper Transport Company, Inc.

K.S.A. 60-242(*a*) provides when two or more actions involve common questions of law or fact a district court may order the actions consolidated for a single proceeding. The determination to consolidate actions lies within the sound judicial discretion of the district court. *Aspelin v. Mounkes,* 206 Kan. 132, 138, 476 P.2d 620 (1970). One who asserts the court has abused its discretion bears the burden of showing such abuse of discretion. *Hoover Equipment Co. v. Smith,* 198 Kan. 127, 134, 422 P.2d 914 (1967); *Skahan v. Powell,* 8 Kan. App. 2d 204, 208, 653 P.2d 1192 (1982); *Lemons v. St. John's Hospital of Salina,* 5 Kan. App. 2d 161, 613 P.2d 957, *rev. denied* 228 Kan. 807 (1980); *State v. Wright,* 4 Kan. App. 2d 196, Syl. ¶ 5, 603 P.2d 1034 (1979), *rev. denied* 227 Kan. 928 (1980). Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion. *Stayton v. Stayton,* 211 Kan. 560, 562, 506 P.2d 1172 (1973); *Cook v. Cook,* 231 Kan. 391, 394, 646 P.2d 464 (1982).

There were many common facts in these cases. Each arose from the same highway project. Both plaintiff businesses alleged the same activities of defendant caused them injury. The same type of relief was sought in each case. Common questions of law were present. It is interesting to note both plaintiffs filed a joint brief before this court and raised identical issues therein.

We find this issue to be without merit.

Finally plaintiff contends the district court erred in denying its request for discovery.

Like the consolidation of cases, the control of discovery in Kansas is entrusted to the sound discretion of the district court, K.S.A. 60-226(*c*) and K.S.A. 60-237(*a*)(2), and orders concerning discovery will not be disturbed on appeal in the absence of a

clear abuse of discretion. *Commercial Union Ins. Co. v. City of Wichita,* 217 Kan. 44, Syl. ¶ 8, 536 P.2d 54 (1975). See also *Binyon v. Nesseth,* 231 Kan. 381, 646 P.2d 1043 (1982).

The factual basis and legal theories on which relief was sought in each count of the petition were before the district court. These were examined by the district court and it held plaintiff had failed to state a cause of action in either count. We have agreed with the district court's determination relative thereto. Nothing has been presented to us to show discovery could in any way have affected the outcome herein.

We conclude no abuse of discretion has been shown relative to discovery.

The judgment is affirmed as to the appeal of appellant Lone Star Industries, Inc. The appeal of appellant Crupper Transport Company, Inc., is dismissed.